74 P.3d 944

**William George JACHIMEK, President of Central Pawn, Inc., Plaintiff–Appellant,**

*v.*

**STATE of Arizona, Defendant Appellee.**

No. 1 CA–CV 02–0133.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 21, 2003.

Beus Gilbert PLLC by Jeffrey R. Finley, Christopher A. Caserta, James E. Phelps, Phoenix, Attorneys for Plaintiff–Appellant.

Peter A. Van Haren, Phoenix City Attorney by James H. Hays, Assistant City Attorney, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

SNOW, Judge.

¶ 1 William George Jachimek, President of Central Pawn, Inc., appeals the superior

court's judgment upholding the validity of Phoenix City Code § 10–151(A). Section 10–151(A) requires pawnbrokers to pay a $3.00 transaction fee for each pawn transaction report filed with the Phoenix Police Department pursuant to Arizona Revised Statutes ("A.R.S.") section 44–1625(A) (2003). The superior court concluded that the ordinance imposes a permissible fee rather than an invalid tax, and that State law does not preempt the City from assessing the fee. For the following reasons, we affirm the superior court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Arizona Revised Statutes § 44–1625(A) requires pawnbrokers to file with the county sheriff, or his designee, a report on an approved form for each "reportable transaction." A.R.S. § 44–1625(A). A "reportable transaction" is defined as "any transaction conducted by a pawnbroker in which merchandise is received through a pawn, purchase, trade or consignment." A.R.S. § 44–1621(15) (2003). The Maricopa County Sheriff designated the Phoenix Police Department as the entity with which pawnshops operating in the City must file their reports. The City adopted a transaction fee ordinance in 1998. Phoenix, Ariz. City Code § 10–151(A) (1996).

¶ 3 Jachimek serves as president of the corporation that operates Central Pawn, a pawnshop in Phoenix, Arizona. On several occasions in 2000, Jachimek filed the reports required by A.R.S. § 44–1625, but failed to pay the transaction fees required by the transaction fee ordinance. The City filed six civil enforcement complaints in Phoenix Municipal Court to collect the fees and fines required under the ordinance. Jachimek defended his failure to pay by arguing that the transaction fee ordinance was an invalid tax that violated the Arizona Constitution. The Phoenix Municipal Court agreed, concluding that A.R.S. §§ 44–1621 through 44–1632 (the

"Pawnshop Act") preempted the City's transaction fee ordinance, and the court therefore dismissed the civil complaints against Jachimek with prejudice. The court, however, denied Jachimek's request to enjoin the City from further enforcement of the ordinance and his request for a refund of transaction fees previously paid. The City timely appealed the municipal court's decision to the superior court pursuant to A.R.S. § 22–425(B) (2002).

¶ 4 The superior court ruled that the ordinance imposed a valid regulatory fee rather than an unconstitutional tax on each transaction report and that the transaction fee ordinance was not preempted by state law. Jachimek timely appealed the superior court's ruling.[1]

¶ 5 We generally lack jurisdiction over cases appealed to the superior court from a municipal court. See, e.g., Sanders v. Moore, 117 Ariz. 527, 528, 573 P.2d 927, 928 (App. 1977) (holding that A.R.S. § 12–2101(B)'s grant of jurisdiction over appeal from final judgment in cases "brought into a superior court from any other court" does not include jurisdiction over cases appealed from other courts); Morgan v. Cont'l Mortgage Investors, 16 Ariz.App. 86, 91–92, 491 P.2d 475, 480–81 (1971). Nevertheless, we have jurisdiction in cases involving the "validity of a tax, impost, assessment, toll, statute or municipal ordinance." See Ariz. Const. art. 6, § 5; A.R.S. § 12–120.21(A)(1) (2003).

## DISCUSSION

¶ 6 Jachimek contends that the City's pawnbroker transaction fee is an unconstitutional "tax" in violation of the Arizona Constitution, Article 9, Section 6. Alternatively, he argues that the state legislature has preempted local control over pawnshops, therefore, the transaction fee ordinance is invalid because it exceeds the limited scope of local regulation allowed by A.R.S. § 44–

---

1. When Jachimek originally filed his appeal from the November 16, 2001 minute entry, that minute entry was unsigned and thus unappealable. Following oral argument, we issued an order pursuant to Eaton Fruit Co. v. California Spray–Chemical Corp., 102 Ariz. 129, 426 P.2d 397 (1967), suspending the appeal and re-vesting jurisdiction in the superior court to consider Jachimek's application for a signed, written order corresponding to the November 16, 2001 minute entry. The superior court granted the application and issued a signed, written order on January 8, 2003. The appeal was reinstated before our court on January 14, 2003.

1632. Finally, he contends that, at the least, the fees are unconstitutionally excessive because they are not in reasonable proportion to the services rendered.

### A. The "Transaction Report Fees" Are Not Taxes.

■ ¶ 7 In Arizona, a municipality cannot levy a tax unless such authority is clearly delegated to the City by the legislature or is contained in the city charter. *City of Phoenix v. Ariz. Sash, Door & Glass Co.*, 80 Ariz. 100, 102–03, 293 P.2d 438, 439 (1956). Jachimek contends that the "transaction fees" are unenforceable because they are taxes imposed without authority by the City's charter or by state statute. The City concedes that if this court concludes that the transaction fee is actually a tax, then the transaction fee is invalid. However, the City contends that the pawnbroker transaction charge constitutes a fee, not a tax, and that the City has the authority to assess fees under the City charter.

¶ 8 The City's charter enumerates several powers to the City Council, including the power "[t]o fix the fees and charges for all official services not otherwise provided for in this Charter." Ch. IV, § 2(37), Charter, City of Phoenix (2001). If the "transaction fees" are true fees, rather than taxes, we agree that the City's charter provides appropriate authority for enactment of the transaction fee ordinance. We turn then to the question whether the $3.00 charge for filing each transaction report is a fee or a tax. There are three cases in Arizona that discuss this distinction.

¶ 9 Last year, in *May v. McNally*, 203 Ariz. 425, 55 P.3d 768 (2002), our Supreme Court set forth three factors to use in distinguishing a fee from a tax. In *May*, the Court held that a surcharge on civil and criminal fines imposed under Arizona's clean elections law did not violate the First Amendment rights of those subject to the surcharge. 203 Ariz. at 431, ¶ 27, 55 P.3d at 774. One of the amici argued that while a tax might have been appropriately imposed to fund campaigns under the law, the surcharge constituted a fee, and a fee could not be so used. *Id.* at 430, ¶ 23, 55 P.3d at 773.

While the Court did not find this argument dispositive, *see id.*, it nonetheless rejected it, finding the surcharge to be a tax rather than a fee. *Id.* at 774, ¶ 24, 55 P.3d at 431. It noted that:

> Whether an assessment should be categorized as a tax or a fee generally is determined by examining three factors: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed."

*Id.* at 430–31, ¶ 24, 55 P.3d at 773–74 (quoting *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir.1996) (citation omitted)). Noting that the assessment "was imposed by citizen initiative on a broad range of payers for a public purpose," *id.* at 431, ¶ 24, 55 P.3d at 774, the Court determined that the surcharge was a tax that did not violate constitutional requirements. *Id.* at 431, ¶ 27, 55 P.3d at 774.

¶ 10 In *Stewart v. Verde River Irrigation & Power District*, 49 Ariz. 531, 534, 545, 68 P.2d 329, 330, 335 (1937), the Arizona Supreme Court held that charges in excess of $10,000 in connection with the issuance of a water appropriation permit constituted a fee, not a tax. In distinguishing between a fee and a tax, the court noted that a fee is a voluntary charge paid in return for a public service that bestows a particular benefit on the recipient, "while a tax is a forced contribution of wealth to meet the public needs of the government." *Id.* at 544–45, 68 P.2d at 334–35 (citations omitted). While a fee can be avoided by not requesting the particular service associated with it, a tax cannot be avoided based on the same premise. *Id.* at 545, 68 P.2d at 335. A tax relates to the taxpayer's ability to pay based on the taxpayer's "property or income" rather than its relation to any particular government service. *Id.* at 544–45, 68 P.2d at 334–35.

¶ 11 In *Kyrene School District No. 28 v. City of Chandler*, 150 Ariz. 240, 243, 722 P.2d 967, 970 (App.1986), the City of Chandler imposed system development charges on new buildings based on the size of the meter

installed in the building. *Id.* at 242, 722 P.2d at 969. The resulting funds were deposited in the City's "water development reserve fund" to be used for later expansion and enlargement of the water system in Chandler. *Id.* The school district argued that the charge was a tax and, therefore, invalid. *Id.* Nevertheless, applying the test set forth in *Stewart,* we concluded that "system development charges" imposed by the City of Chandler were fees, not taxes. *Id.*

¶ 12 We explained that the school district "receiv[ed] the overall benefit of Chandler's water and wastewater systems in exchange for the system development charges." *Id.* at 243, 722 P.2d at 970. Thus, the amount charged the school district was based on the cost of the systems providing the service and, unlike a tax, the charges were not "based on an ability to pay theory." *Id.* Moreover, although the funds were used for "the general governmental purpose of providing city-wide water and sewer service," the fees charged "represent[ed] part of the capital cost of the wastewater and water systems spread among its users." *Id.* at 244, 722 P.2d at 971. Thus, we concluded, the charges were appropriately considered fees, not taxes. *Id.*

■ ¶ 13 Applying the factors set forth in *May* in light of *Stewart* and *Kyrene School District,* we conclude that the charges in this case are likewise fees and not taxes.

## 1. Phoenix Has Imposed The Assessment Upon Those Subject to Its Regulatory Control.

¶ 14 In distinguishing between a tax and a fee, the First Circuit observed that "[t]he classic 'tax' is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community.... The classic 'regulatory fee' is imposed by an agency upon those subject to its regulation." *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico,* 967 F.2d 683, 685 (1st Cir.1992) (internal citations omitted).

¶ 15 In this case the assessment is not generally imposed by the legislature or the electorate. It is imposed by the City only upon pawnbrokers within its boundaries who file the transaction reports required by state statute with the City. The parties acknowledge that the City is the Sheriff's designee under the statute for receiving the transaction reports. Accordingly, the fee is assessed by the governmental entity that has been delegated regulatory authority over pawn transaction reports pursuant to the statute. *See* A.R.S. § 44–1625.

## 2. The Assessment Is Only Imposed Upon Pawn Brokers.

¶ 16 Under the "voluntariness" standard set forth in *Stewart,* Jachimek argues that the transaction reporting fees are not "voluntary" because a licensed pawnbroker is required to file the transaction reporting forms and, thus, is required to pay the fees. Nevertheless, unlike the requirement to pay a fine resulting from a violation of the law, the decision to become a pawnbroker is a voluntary one, and includes the voluntary decision to comply with the legally imposed regulations and fees associated with acting as a pawnbroker. In exchange for complying with these fees and regulations, the pawnbroker receives a privilege not given to others— the right to engage in pawn transactions. Here, as in *Stewart,* "the necessity of ... payment does not arise unless and until the individual requests the public authority to perform some particular service." *Stewart,* 49 Ariz. at 545, 68 P.2d at 335. The City imposes the charge at issue on each transaction—on each report of a "reportable transaction" filed with the Phoenix Police Department. If no transaction reports are filed, no fees are required.

¶ 17 Because the fee is charged for each transaction, the charge is imposed regardless of the amount of money or value of goods involved in the underlying transaction, and regardless of the pawnbroker's income or property. Thus, the charge relates to the service provided, not the ability to pay.

## 3. The Assessment Is Used For Regulation of the Pawn Industry.

¶ 18 Jachimek argues that the fees collected pay for crime prevention and other en-

forcement activities related to pawnshops, rather than merely for processing the required forms. Thus, he contends that the money collected benefits society at large much more than it benefits individual pawnshop owners and, therefore, the funds collected are taxes that cannot be imposed by a municipality.

¶ 19 However, as the City persuasively argues, pawnshops exist in a heavily regulated environment. The State requires regulation as a price of permitting pawn transactions. In such an environment, the services provided in exchange for the fee may include some services designed to protect the public from the potential negative consequences of permitting the activity, so long as "the fees paid by each particular applicant bear some reasonable relation to the service to be performed by the department in his behalf." *Stewart,* 49 Ariz. at 548, 68 P.2d at 336. As the factors outlined in *May* demonstrate, the amount assessed in such circumstances can be expended for "the regulation ... of the parties upon whom the assessment is imposed," not merely for processing the paperwork associated with the regulation. *See May,* 203 Ariz. at 431, ¶ 24, 55 P.3d at 774.

¶ 20 In *Stewart,* part of the water commissioner's duty in processing permit applications was to reject applications if "the proposed use conflict[ed] with vested rights [of others], or [was] a menace to the safety or against the interest and welfare of the public." *Id.* at 549, 68 P.2d at 336 (citations omitted). Additionally, because the fees collected assisted in funding the water commissioner's activities, some of the funds were used to pay for investigating and rejecting applications. *Id.* at 549–50, 68 P.2d at 336–37 (stating that the fee charged may appropriately be used for expenses incurred in quasi-judicial proceedings, engineering measurements and surveys, recording, filing, mapping and other "services beneficial to the claimant and necessary to the preservation of his rights ... and the protection and assurance of his ... title"). Certainly at least some of these activities, while they served to benefit the efficient operation of the system as a whole, did not directly benefit a water appropriation permit applicant, especially

one whose application was denied. Nevertheless, the court in *Stewart* held that the charges were fees, not taxes. *Id.* at 545, 68 P.2d at 335; *see also Kyrene Sch. Dist.,* 150 Ariz. at 244, 722 P.2d at 971 (stating that "fees" were not rendered "taxes" by virtue of fact that water system development fees would benefit other current and future users of the water system).

¶ 21 The fact that the fees collected from pawnshop owners fund more than ministerial acts of "processing forms" fails to render the charges "taxes" any more than the permit charges in *Stewart* were considered "taxes." And, as in *Stewart,* the amount paid per transaction "bear[s] some reasonable relation to the service to be performed" on the payer's behalf. *Stewart,* 49 Ariz. at 548, 68 P.2d at 336. Specifically, additional transactions reported by pawnshop owners result in additional fees that must be collected to provide additional services. Furthermore, the transaction reporting form provides a measure of security to the pawnbroker by ensuring that the pawnbroker is not trafficking in stolen property, deterring the attempted pawning of stolen property, and protecting pawnbrokers from extending money in exchange for items that may later be confiscated by police.

¶ 22 The assessment here was imposed by a municipality on a limited group to fund appropriate services and associated regulatory activity for that group. Accordingly, we hold that the charges imposed by the transaction fee ordinance are in fact fees, not taxes.

### B. The Ordinance Is Not Preempted By State Law.

¶ 23 Jachimek also contends that, even if the charges imposed by the transaction fee ordinance are fees and not taxes, the transaction fee ordinance is unenforceable because it is inconsistent with, or preempted by, state law, specifically A.R.S. §§ 44–1621 through 44–1632.

¶ 24 Jachimek does not contend that the City's transaction fee ordinance directly conflicts with any specific state statute. Instead, he argues that " 'the state legislation has so completely occupied the field that it becomes the sole and exclusive law on the

subject' ... leaving no room for the City's charter provision to supplement its authority to act in the area." *Jett v. City of Tucson*, 180 Ariz. 115, 121, 882 P.2d 426, 432 (1994) (quoting *State v. Mercurio*, 153 Ariz. 336, 340, 736 P.2d 819, 823 (App.1987)).

¶ 25· Whether local legislation is preempted is a "question of legislative intent, which can be either express or implied." *Babe's Cabaret v. City of Scottsdale*, 197 Ariz. 98, 102, ¶ 11, 3 P.3d 1018, 1022 (App. 1999). However, the intent to preempt local legislation "must be clear; a negative inference is insufficient." *City of Tucson v. Consumers for Retail Choice Sponsored by Wal-Mart*, 197 Ariz. 600, 603, ¶ 7, 5 P.3d 934, 937 (App.2000) (citations omitted).

¶ 26 Jachimek contends that the legislature, by enacting comprehensive regulations related to pawnshops in the Pawnshop Act, has clearly indicated that it intends to preempt local regulation of pawnshops. *See* A.R.S. §§ 44–1621 to –1632 (2003). Although the laws in the Pawnshop Act are extensive, they fall short of the "sort of comprehensive statutory scheme from which we can infer an obvious preemptive policy." *Jett*, 180 Ariz. at 122, 882 P.2d at 433. This is especially so because the Act explicitly presumes that other governmental agencies may impose fees on pawnshops resulting from reportable transactions.

¶ 27 Section 44–1626(B) allows pawnbrokers to collect at redemption or renewal:

A fee or charge equal to the amount of any fee, tax, imposition or assessment levied or imposed by any governmental agency in connection with or as a result of any reportable transaction. The pawnbroker may collect at the time of any reportable transaction any fee, tax, imposition or assessment that relates to a reportable transaction and that is imposed by a governmental agency.

A.R.S. § 44–1626(B)(6).

¶ 28 Jachimek contends that the legislature added this section in response to the federal Brady Handgun Violence Prevention Act (the "Brady Act"), which requires pawnbrokers to charge a fee in conjunction with a "records check." *See* 18 U.S.C. § 922(s)

(1994). As such, Jachimek argues, § 44–1626(B) does not apply to fees such as those required by the transaction fee ordinance. The City acknowledges that this section probably resulted from the imposition of the "Brady fee" on pawnbrokers. However, the legislature did not limit the language of the statute to fees charged pursuant to the Brady Act. Instead, the legislature used extremely broad language, stating that pawnbrokers may collect "*any* fee, tax, imposition or assessment ... imposed by *any* governmental agency *in connection with or as a result of any reportable transaction*." A.R.S. § 44 1626(B)(6) (emphasis added). Thus, the statute's plain language contemplates that other "governmental agenc[ies]" might impose other types of fees, taxes, impositions, or assessments that are "connect[ed] with" or "result" from reportable transactions, and allows pawnbrokers to recoup those costs. *Id.*

¶ 29 Moreover, in 2000, two years after the City enacted the transaction fee ordinance, the legislature added the second sentence of § 44–1626(B)(6), allowing collection "at the time of any reportable transaction" of "*any fee* " that "*relates to* a reportable transaction and that is imposed by *a governmental agency*." A.R.S. § 44–1626(B)(6) (emphasis added). The transaction fees at issue in this case certainly "relate[ ] to a reportable transaction" and Jachimek does not assert that the Phoenix police department is not a governmental agency under the statute. Rather than prohibiting the imposition and collection of such fees by local governmental agencies, the statute provides a mechanism by which the pawnbroker may recoup his costs by passing the fee through to the pledgor at the time of the transaction instead of at the time of redemption. This does not clearly evidence an intent to preempt the City's transaction fee ordinance.

¶ 30 Nothing in the Pawnshop Act expressly states that municipalities cannot adopt non-conflicting ordinances relating to pawnshops, and there is no indication in the article itself that the legislature intended to completely preempt any consistent local regulation. Section 44–1626 of the Act allows pawnbrokers to "pass through" any fees im-

posed by any governmental agency and related to a reportable transaction, thereby implying legislative acceptance of the imposition of such fees. *See* A.R.S. § 44–1626(B)(6). "Absent a clear manifestation of legislative intent to preclude local control, there is no preemption." *Babe's Cabaret*, 197 Ariz. at 102, ¶ 11, 3 P.3d at 1022. In these circumstances, we conclude that there is no preemption.

## C. The $3.00 Fee Is Not Unconstitutionally Excessive.

¶ 31 Finally, Jachimek contends that the transaction fee of $3.00 per report filed is unconstitutionally excessive because it exceeds by many times the City's cost to process the reports. *See Stewart*, 49 Ariz. at 545, 68 P.2d at 335 (explaining that an otherwise permissible fee might nevertheless be unconstitutional if it is not in reasonable proportion to the services rendered). We must consider two factors in determining whether a fee is excessive: "(a) was the fee based upon the theory of paying the reasonable expenses to the state of furnishing the service, or was it fixed for the purpose of returning a surplus revenue to the state, and (b) if the former be true, was the scale of payment in reasonable proportion to the services rendered." *Id.*

¶ 32 The City admits that the $3.00 fee per reportable transaction exceeds the cost to merely input the information from the pawn ticket into the computer system. However, the City intended that the fee not only fully recover the cost of processing reports, but also to act on the information processed by comparing reports of pawned property against reports of stolen property, identifying theft and burglary suspects, and inspecting pawnshops and secondhand dealers. The City asserts that the fee does not, in fact, recover all of the these costs as intended.

¶ 33 Even assuming that the transaction fees cover all of the City's intended costs, we still conclude that the fees are not unconstitutionally excessive. As briefly discussed in section A above, the fact that transaction fees might provide more revenue than is strictly necessary to process the paperwork involved

in the transaction does not make the fee unconstitutional. It is permissible to allow such fees to cover the full costs of providing statutorily required services, *see Stewart*, 49 Ariz. at 551, 68 P.2d at 337 (finding "it obvious that the duty imposed upon the water commissioner . . . may, in many cases, require [an] extensive and expensive . . . investigation and hearing"), or to benefit other present and future users of the system as well as the fee payer. *See Kyrene Sch. Dist.*, 150 Ariz. at 244, 722 P.2d at 971 (rejecting the argument that charges were taxes because they were used to provide citywide water and sewer service).

¶ 34 In this case, we think it is reasonable for the sheriff's designee to do more than collect and input data from the statutorily required paperwork. To effectuate the statutory purpose behind the requirement that transaction reports be filed, someone must analyze the information provided, investigate leads, and attempt to catch thieves. Pawnbrokers, as well as the general public, will benefit from such use of the information provided.

¶ 35 Moreover, as our Supreme Court explained in *Stewart*, "the presumption is [that] the Legislature fixed the fee schedule . . . on the theory, and with the reasonable expectation, of obtaining a revenue not greater than the cost of maintaining the department, and not for the purpose of securing revenue for the general expenses of the state government." 49 Ariz. at 547, 68 P.2d at 335–36. No evidence in the record suggests that the City intended to make a profit from the transaction fees to use for unrelated purposes or as surplus revenue. The only evidence submitted showed that the fees collected were to be used to pay the costs of maintaining the department in charge of processing, analyzing, and using the information provided in the pawn transaction reports. We conclude that the fee is "based upon the theory of paying the reasonable expenses . . . of furnishing the service." *Id.* at 545, 68 P.2d at 335.

¶ 36 The second factor to consider is whether the scale of payment is reasonable in proportion to the services rendered. *Id.*

Thus, the $3.00 fee per transaction report filed must "bear some reasonable relation to the service to be performed by the department in [the filer's] behalf." *Id.* at 548, 68 P.2d at 336. The reasonableness of the fee is based upon what the department theoretically "should do," not what it actually "does" or "does not do" in a given case. *Id.* at 552, 68 P.2d at 338. The City indicates that it diligently checks the information on the form against each report of stolen property to determine whether the item listed is stolen, and, if so, to track the item and the pledgor, and attempt to return the item to its true owner. That any given form may not disclose stolen property does not change the nature of the required services—processing, analyzing, and investigating as necessary.

¶ 37 In this case, we think the fees are in reasonable proportion to the services rendered in connection with each transaction. Although the fees are uniform, so that a report filer pays the same fee regardless of the value of the goods and regardless of whether the goods turn out to be stolen property, the fees are reasonably related to the average amount of work required to process the forms.

¶ 38 We therefore conclude that the $3.00 transaction fee is not unconstitutionally excessive.

## CONCLUSION

¶ 39 For the foregoing reasons, we affirm the superior court's ruling, and remand the case to the Phoenix Municipal Court for further proceedings.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.