143 P.3d 1030

**NORTHWEST FIRE DISTRICT, an Arizona fire district, Plaintiff/Appellant,**

v.

**U.S. HOME OF ARIZONA CONSTRUCTION COMPANY, an Arizona corporation; and U.S. Home Corporation, a Delaware corporation, Defendants/Appellees.**

No. 2 CA–CV 2006–0061.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 29, 2006.

Benavidez Law Group, P.C., by Thomas A. Benavidez and Christopher B. Wencker, Tucson, Attorneys for Plaintiff/Appellant.

Gallagher & Kennedy, P.A., by Jeffrey D. Gross, Phoenix, Attorneys for Defendants/Appellees.

Bancroft Susa & Galloway, by James M. Susa and Michael G. Galloway, Tucson, Attorneys for Amicus Curiae Arizona Tax Research Association.

Leonard Felker Altfeld Battaile & Goldman, P.L.C., by Donna M. Aversa, Tucson, Attorneys for Amici Curiae, Apache Junction Fire District, Drexel Heights Fire District, Golder Ranch Fire District, Green Valley Fire District, Sun City Fire District, Sun City West Fire District, and Central Yavapai Fire District.

## OPINION

ECKERSTROM, Presiding Judge.

¶ 1 The governing board of plaintiff/appellant Northwest Fire District adopted a resolution to impose a "facilities benefit assessment" on homes not yet constructed but for which a landowner has obtained a building permit. Contending the District had no authority to do so, U.S. Home of Arizona Construction Company and U.S. Home Corporation (collectively, US Home) refused to pay the assessments on homes they were building. The District brought an action to force US Home to pay the assessment. The trial court granted summary judgment in favor of US Home, and the District appealed. Because we conclude the District had authority to adopt the resolution, because the assessment is not a tax or a development fee, and because US Home failed to show the amount of the assessment is not rationally related to its purpose, we reverse the summary judgment.

¶ 2 The following facts are undisputed. The District is a fire district organized under Arizona law that is required to provide emergency medical, fire, and rescue services within its jurisdiction. To fulfill these responsibilities, the District requires facilities, equipment, and personnel sufficient to meet national standards of care. The District relies on property tax revenue to provide its services and is required to provide services to homes when construction begins although property taxes are not collected on the homes for up to fifteen months after they have been completed.

¶ 3 In 2003, three partially constructed new homes caught fire and required the District's services. Shortly thereafter, the District's governing board passed a resolution adopting a $387 facilities benefit assessment, to be paid before the issuance of a building permit on each new home "for the costs of developing facilities from which to provide services to new building construction areas." In determining the appropriate amount for the assessment, the District considered a Facilities Benefit Assessment Study prepared by a consulting firm. After the resolution took effect in January 2005, the District sent invoices to US Home and other builders to collect the assessment for homes for which building permits had been issued for new construction. US Home refused to pay the assessment, and the District filed a complaint for declaratory relief.

¶ 4 US Home moved for summary judgment, arguing the charge is invalid. The trial court granted the motion, ruling that the District interpreted A.R.S. § 48–805(B)(14) too broadly and that the provision does not authorize the District to collect a universal assessment on a broad class of property. Rather, the court concluded that

the statute allows the District to adopt a "fee schedule for actual services rendered," not to "effectively charg[e] a tax (or property assessment) masqueraded as a 'fee.'"

¶ 5 The District argues the trial court erred by granting summary judgment in US Home's favor. Specifically, the District contends the legislative intent of § 48–805(B)(14) is to give fire districts authority to adopt assessments such as the one at issue here, the court should have presumed the assessment is valid, the assessment is not a discriminatory tax, and the amount of the assessment bears a rational relationship to its purpose. "In reviewing a summary judgment in a case involving undisputed material facts, we independently review the trial court's application of the law to the facts. Additionally, we review the interpretation and application of statutes de novo." *Vales v. Kings Hill Condo. Ass'n,* 211 Ariz. 561, ¶ 9, 125 P.3d 381, 384 (App.2005) (citation omitted).

### Did the District Have Statutory Authority to Adopt the Resolution?

¶ 6 Section 48–805 sets forth the powers and duties of fire districts, which include the power to "[a]dopt resolutions establishing fee schedules for providing fire protection services and services for the preservation of life including emergency fire and emergency medical services, plan reviews, standby charges, fire cause determination, users' fees, facilities benefit assessments or any other fee schedule that may be required." § 48–805(B)(14). We interpret statutes to effectuate the intent of the legislature. *Kent K. v. Bobby M.,* 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005). "To determine the legislature's intent in enacting a statute we look first to the provision's language, and will ascribe plain meaning to its terms unless the legislature assigned a special meaning to one or more terms." *Lyons v. State Bd. of Equalization,* 209 Ariz. 497, ¶ 8, 104 P.3d 867, 869 (App.2005) (citation omitted).

¶ 7 The District argues that, in determining the plain meaning of the statute, we should apply the dictionary definitions of the three words that compose the term "facilities benefit assessment." The dictionary defines

facility as "something (as a hospital) built or installed for a particular purpose"; benefit as an "advantage"; and assess as "to fix the rate or amount of." *The New Merriam-Webster Dictionary* 59, 82, 269 (1989). However, those definitions do not resolve ambiguities in the phrase as a whole. For example, does facility refer to the property to be benefited or the property giving the benefit? Is the term assessment another word for fee or does it describe the process of assessing a facility's benefits? Accordingly, we find the definition approach too simplistic.

¶ 8 Although the Arizona legislature has not "assigned a special meaning" to the term "facilities benefit assessment," *Lyons,* 209 Ariz. 497, ¶ 8, 104 P.3d at 869, we find statutes from other jurisdictions more helpful than dictionary definitions in ascertaining the meaning of the term. *Cf. Branch v. State,* 15 Ariz. 99, 104, 136 P. 628, 630–31 (1913) ("Where the wording of a statute is ambiguous and uncertain ... cases from other jurisdictions construing a like statute or interpreting its words are persuasive and helpful."). In addressing a challenge to a San Diego city resolution imposing a facilities benefit assessment, a California court defined the term as "a special assessment against real property for public improvements." *Barratt Am., Inc. v. City of San Diego,* 117 Cal.App.4th 809, 12 Cal.Rptr.3d 132, 135, 137 (2004); *see also City of San Diego v. Holodnak,* 157 Cal.App.3d 759, 203 Cal.Rptr. 797, 798 (1984) ("The [facilities benefit assessment] is a method of spreading the cost for certain public facilities among the properties benefited by those facilities."); *see also* Mich. Comp. Laws Ann. § 324.31110 (giving river management board power to "[a]dopt and maintain a schedule of benefit assessments upon local units of government in the district levied to help defray the costs of capital improvements"); Wash. Rev.Code Ann. § 84.33.035 (" 'Special benefit assessments' means special assessments levied ... by a local government to pay for all or part of the costs of a local improvement and which may be levied only for the special benefits to be realized by property by reason of that local improvement."). Thus, the District's characterization of its facilities benefit

assessment—as a fee "to help pay for the costs of developing facilities from which to provide services to new building construction areas"—fits squarely within the meaning other jurisdictions have given the term.

¶ 9 The trial court held that § 48-805(B)(14), read as a whole, only enables the District to set a fee schedule for specific services rendered and thus implicitly held fees must be collected only from those who use its services. Indeed, several of the services the legislature authorized in that provision necessarily address the needs of a specific property owner—and do not equally benefit the broader class of property owners in the District. For example, the statute enables the District to collect fees for plan reviews and standby charges—benefits inuring to a specific piece of property. § 48-805(B)(14). For that reason, the trial court ruled that the District, pursuant to its authority under § 48-805(B)(14), may only establish fee schedules for "actual services rendered."

¶ 10 But the court overlooked that the District renders an actual service to US Home in exchange for the facilities benefit assessment: a guarantee that, if any of its construction workers is injured on the job or if any partially completed home catches fire, the District will have adequate facilities available to "provid[e] fire protection services and services for the preservation of life." § 48-805(B)(14). Thus, even assuming the legislature intended to limit the District's authority under § 48-805(B)(14) to imposing fees exclusively on those who directly benefit from the itemized services, the facilities benefit assessment imposed on US Home would not run afoul of that limitation. At oral argument, US Home countered that, as a payor of property tax, it was already entitled to receive the District's services, and therefore, the assessment cannot be characterized as a fee for services rendered. But the District correctly emphasizes that, while US Home is in the process of building new homes, it is only taxed on the assessed value of the land—and not on the greater value of the completed homes until up to fifteen months after their completion. In the interim, home builders create a much greater need for the

District's services both for fire protection of the partially constructed homes and for the availability of emergency medical services for the construction crews. Thus, the District could have reasonably concluded that the property taxes paid by builders on previously vacant land does not cover the elevated level of service required during the construction process.

¶ 11 US Home argues the legislature could not have intended to create "an entirely new, completely unrestricted funding source for capital improvements that [the District] may collect directly from property owners" because the legislature did not explicitly grant authority "tempered by limitations such as those imposed on bonds[,] . . . tax allocations[,] . . . or on development fees." However, the prior version of § 48-805(B)(14) contained express language limiting its applicability to "nontaxpayers" and "nonresidents." 1987 Ariz. Sess. Laws, ch. 299, § 5. Because the legislature thereby demonstrated that it knows how to expressly limit a grant of authority when it wishes to do so—and because the adoption of an amendment lifting those limits suggests the legislature considered the precise scope of its grant of authority—we must presume the legislature intended to grant fire districts broad discretion to impose fees and assessments for the services itemized in § 48-805(B)(14). See 2000 Ariz. Sess. Laws, ch. 232, § 1; see also 2003 Op. Ariz. Att'y Gen. I03-004, at 89 (recognizing legislative intent in 2000 amendment of § 48-805(B)(14) "to broaden a fire district's authority to establish fee schedules").

¶ 12 Moreover, we reject US Home's suggestion that the legislature could not have intended to authorize the District to impose a facilities benefit assessment because that would give the District unfettered discretion. The District is a political entity with an elected board and is therefore directly accountable to the public. See A.R.S. § 48-802(D) (setting forth election procedures for fire chief and district board). Consistent with that accountability, the District held public meetings before adopting the resolution imposing the assessment at issue. And the District's discretion to exercise its au-

thority is further limited by the constitutional requirement that any legislative enactment be rationally related to a legitimate District interest. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale,* 187 Ariz. 479, 482, 930 P.2d 993, 996 (1997).

¶ 13 In this same vein, the trial court concluded the legislature could not have intended to grant the District authority to fund the acquisition of new facilities through a § 48–805(B)(14) assessment because the broader statutory scheme provides the District bonding authority specifically for that purpose. *See* § 48–805(B)(3). Indeed, subsection (B)(3) authorizes the District to "[f]inance the acquisition of property" with funding from bonds. But nothing in that subsection precludes the District from using other statutorily authorized means to acquire property and other resources. To the contrary, the legislature has characterized both the grant of bonding authority and the authorization of a fee schedule for a facilities benefit assessment as permissible but not mandatory mechanisms for securing funding. *See* § 48–805(B) (providing "fire district ... may" engage in such activities); *see also Outdoor Sys., Inc. v. City of Mesa,* 169 Ariz. 301, 307, 819 P.2d 44, 50 (1991) (legislature's use of word "may" implies provision is permissive).

¶ 14 Furthermore, the District's stated purpose for imposing the assessment is "to help pay for the costs of developing facilities from which to provide services." That development presumably involves more than just the acquisition of property itself. And the trial court's implicit conclusion—that the legislature did not intend to authorize the District to use fees raised pursuant to § 48–805(B)(14) to acquire property—cannot be harmonized with the plain language of that provision expressly authorizing the District to impose a "facilities benefit assessment." Neither the trial court nor US Home has explained what the legislature intended to authorize by that language if not a fee imposed on property owners who benefit from the funded fire district facilities. *See Bilke v. State,* 206 Ariz. 462, ¶ 11, 80 P.3d 269, 271 (2003) (we interpret statutes to give effect to each word, clause, and phrase).

¶ 15 Finally, nothing in § 48–805(B)(14), or any other provision in the relevant statutory scheme, indicates the District lacks authority to impose a fee on owners of property who are in the process of constructing a home. As noted, the statute was amended in 2000 to allow fire districts to establish fee schedules for property owners whether residents or nonresidents, taxpayers or nontaxpayers. 2000 Ariz. Sess. Laws, ch. 232, § 1. Because the legislature thus specifically considered the scope of § 48–805(B)(14) and did not exclude owners in the process of constructing a home, we reject US Home's contention that the legislature could not have intended to authorize the District to assess fees against it. *See Bridgestone/Firestone N. Am. Tire, L.L.C. v. A.P.S. Rent–A–Car & Leasing, Inc.,* 207 Ariz. 502, ¶ 34, 88 P.3d 572, 581 (App.2004) (legislature is capable of including exceptions to legislation if it so intends).

### Is the Assessment a Fee or a Tax?

¶ 16 US Home argues that, even if the District had the authority to impose an assessment in the abstract, the resolution at issue is a discriminatory property tax rather than the type of fee contemplated by § 48–805(B)(14). *See* Ariz. Const. art. IX, § 1 ("[A]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax."). Our supreme court has listed three primary factors to consider when determining whether an assessment is a fee or a tax: " '(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed.' " *May v. McNally,* 203 Ariz. 425, ¶ 24, 55 P.3d 768, 773–74 (2002), *quoting Bidart Bros. v. Cal. Apple Comm'n,* 73 F.3d 925, 931 (9th Cir. 1996).

¶ 17 The entity that imposed the assessment here, the fire district, is not the legislature or the electorate but, rather, a quasi-municipal agency enabled by the legislature to perform a specific function. *See Cal. Portland Cement Co. v. Picture Rocks Fire Dist.,* 143 Ariz. 170, 174, 692 P.2d 1019,

1023 (App.1984) (fire districts are quasi-municipal corporations). This factor weighs in favor of characterizing the assessment as a fee. *See Jachimek v. State,* 205 Ariz. 632, ¶¶ 14–15, 74 P.3d 944, 948 (App.2003) (that assessment not imposed by legislature but by city or other regulatory agency of state suggests assessment is fee rather than tax). Moreover, an "assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Bidart Bros.,* 73 F.3d at 931. The District has imposed the assessment on parcels of property upon which houses are being constructed within its jurisdiction, a narrow, specifically defined class. *See Jachimek,* 205 Ariz. 632, ¶¶ 16–17, 74 P.3d at 948 (that assessment was only imposed on pawnbrokers suggested it was fee rather than tax).

¶ 18 And, even if the first two factors are not dispositive, "courts examining whether an assessment is a tax 'have tended … to emphasize the revenue's ultimate use.'" *Bidart Bros.,* 73 F.3d at 931, *quoting San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico,* 967 F.2d 683, 685 (1st Cir.1992) (alteration in *Bidart Bros.*). Although we construe as taxes assessments treated as general revenues, paid into the state's general fund, and used to benefit the entire community, *Jachimek,* 205 Ariz. 632, ¶ 14, 74 P.3d at 948, this assessment will not be used to benefit the entire community but, rather, to develop facilities or other resources designed to benefit both those in the process of building homes and those who eventually purchase those homes. Thus, it will be "'used for the regulation or benefit of the parties upon whom the assessment is imposed.'" *May,* 203 Ariz. 425, ¶ 24, 55 P.3d at 774, *quoting Bidart Bros.,* 73 F.3d at 931; *see also Kyrene Sch. Dist. No. 28 v. City of Chandler,* 150 Ariz. 240, 243, 722 P.2d 967, 970 (App.1986) (charges to be paid upon issuance of building permit for capital expansion of water systems were fees, not taxes, because school district was "receiving the overall benefit" of city's water systems in return).

¶ 19 US Home counters that the amount of the assessment bears no "demonstrable relationship" to its purpose and therefore imposing the assessment constitutes "an invalid attempt to raise general revenues," an attribute of a tax. However, the District determined the amount of the assessment after considering a Facilities Benefit Assessment Study prepared by a consulting firm. The study considered future household, employment, and population growth projections in the District's jurisdiction, as well as the current demand for fire and rescue services, among other factors, to determine the maximum supportable assessment per type of new construction. US Home complains that the study is not sufficient to establish that the District "incurs [an] actual cost of $387 to provide service to each new construction site between the time a building permit is issued and the date the property begins generating property tax." But the District had a rational, founded basis for imposing the assessment in the amount it chose—and it chose that amount by referring to the specific purpose of the assessment rather than as an effort to raise general revenue. We decline US Home's invitation to second-guess the judgment of the District's elected officials acting in their legislative capacity. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale,* 187 Ariz. 479, 482, 930 P.2d 993, 996 (1997) (we defer to municipalities' legislative decisions). Although reasonable minds might differ over the fairness and wisdom of the assessment, the propriety of such public policy decisions must be addressed through the political process by the appropriate duly elected officials—legislators and fire district board members.

¶ 20 Finally, the California Court of Appeal has held that a facilities benefit assessment similar to the one imposed by the District is not a tax. *See J.W. Jones Cos. v. City of San Diego,* 157 Cal.App.3d 745, 203 Cal.Rptr. 580, 589 (1984). For the above reasons, we conclude the assessment here is not a tax. We therefore need not address U.S. Home's related argument that the assessment is an unconstitutionally discriminatory tax.

### Is the Assessment a Development Fee?

■ ¶ 21 Lastly, US Home argues that the assessment is a constructive development fee, which municipalities are authorized to

impose but fire districts are not. *Compare* A.R.S. § 9–463.05(A) ("A municipality may assess development fees . . . .") *with* § 48–805(B)(14) (containing no specific authorization for fire districts to impose development fees). Specifically, US Home contends that development fees are substantially similar in their purpose and nature to the facilities benefit assessment imposed by the District and that, because the legislature could have used the term "development fee" in authorizing fees pursuant to § 48–805(B)(14) but did not, the District exceeded the scope of its authority.

¶ 22 We agree with US Home that both the District's manner of collecting the assessment—requiring payment when a building permit is issued—and the stated purpose of the assessment mirror features of a development fee. *See* § 9–463.05(A) ("A municipality may assess development fees to offset costs to the municipality associated with providing necessary public services to a development."); § 9–463.05(B)(3) (developers pay fees when construction permit is issued). But we disagree that any such similarity is fatal to the District's claim of authority to impose the assessment. First, we can find no authority or logic for the proposition that the legislature cannot have intended to authorize something similar to a development fee simply because it did not use that phrase when describing the District's authority. And, as previously discussed, we cannot fathom what the legislature intended when it

authorized fire districts to impose fee schedules for "facilities benefit assessments" if it did not intend to allow the District to assess fees on those who benefit from the District's facilities. § 48–805(B)(14). Thus, were we to adopt US Home's reasoning, we would render the term "facilities benefit assessment" as articulated in § 48–805(B)(14) a nullity. *See Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993) ("A statute is to be given such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant."). In sum, whether such assessments are similar in nature to development fees or not, we conclude that the legislature intended to authorize those assessments when it promulgated § 48–805(B)(14).

¶ 23 For the foregoing reasons, we reverse the trial court's entry of summary judgment against Northwest Fire District and remand the case for further proceedings consistent with this decision.

CONCURRING: J. WILLIAM BRAMMER, JR., and PHILIP G. ESPINOSA, Judges.