SUPREME COURT OF ARIZONA
En Banc

NORTHWEST FIRE DISTRICT, an          )   Arizona Supreme Court
Arizona fire district,               )   No. CV-06-0377-PR
                                     )
          Plaintiff/Appellant,       )   Court of Appeals
                                     )   Division Two
               v.                    )   No. 2 CA-CV 06-0061
                                     )
U.S. HOME OF ARIZONA                 )   Pima County
CONSTRUCTION COMPANY, an Arizona     )   Superior Court
corporation; and U.S. HOME           )   No. C20054558
CORPORATION, a Delaware              )
corporation,                         )
                                     )
          Defendants/Appellees.      )   **O P I N I O N**
                                     )
_____    )


Appeal from the Superior Court in Pima County
The Honorable Carmine Cornelio, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division Two
213 Ariz. 489, 143 P.3d 1030 (2006)

**VACATED**
_____

BENAVIDEZ LAW GROUP, P.C.                                  Tucson
     By   Thomas A. Benavidez
          Christopher B. Wencker
Attorneys for Northwest Fire District

GALLAGHER & KENNEDY, P.A.                                 Phoenix
     By   Jeffrey D. Gross
Attorneys for U.S. Home of Arizona Construction Company
and U.S. Home Corporation

BANCROFT SUSA & GALLOWAY, P.C.                             Tucson
     By   James M. Susa
          Michael G. Galloway
Attorneys for Amicus Curiae Arizona Tax Research Association

MILLER LASOTA & PETERS, P.L.C.                          Phoenix
    By   Donald M. Peters
Attorneys for Amicus Curiae The Arizona Fire District
Association
_____

**R Y A N**, Justice

¶1      Arizona Revised Statutes ("A.R.S.") section 48-805(B)(14) (Supp. 2004), permits fire districts to "[a]dopt resolutions establishing fee schedules for providing fire protection services and services for the preservation of life."[1] Included among the permissible fee schedules are those for "facilities benefit assessments."  *Id.*  In this case, we must determine whether the "facilities benefit assessment" charged by Northwest Fire District constitutes a valid exercise of its statutory authority.  We conclude that it does not.

**I**

¶2      Northwest Fire District was organized under Title 48, Chapter 1, Articles 10 and 11 of the Arizona Revised Statutes, to provide emergency services to district residents.  The District covers more than 140 square miles in the northwest portion of metropolitan Tucson – an area that has seen some of the most rapid development in Pima County over the past decade.

_____

[1]     Section 48-805 has since been amended, and the applicable provision has been renumbered as (B)(13).  2006 Ariz. Sess. Laws, ch. 315, § 9.  Because the District passed the Resolution at issue here before this amendment, we will refer to the provision as (B)(14).

This rapid development has strained the District's resources and its ability to adequately meet its statutory duties.

¶3        This economic strain results in part from the timing of property tax assessments.  According to the affidavit of the Pima County Assessor, the value of a residential structure is not included in the tax assessment until construction is complete; even then, the value may not be placed on the tax rolls for up to fifteen months.

¶4        In 2003, the District responded to fires at three partially constructed homes.  Because the value of these structures was not on the property tax rolls, District resources were expended to protect property that had not yet been fully taxed.  This situation prompted the District to consider imposing a fee, due upon application for a building permit, on new construction.

¶5        In December 2004, the District's board, relying on A.R.S. § 48-805(B)(14), approved Resolution 2004-048 authorizing a facilities benefit assessment on new construction.  Section 48-805(B)(14) states that fire districts may:

> [a]dopt resolutions establishing fee schedules for providing fire protection services and services for the preservation of life including emergency fire and emergency medical services, plan reviews, standby charges, fire cause determination, users' fees, *facilities benefit assessments* or any other fee schedule that may be required.

(Emphasis added.)

¶6      According to the Resolution, a facilities benefit assessment was necessary to pay "the costs of developing facilities from which to provide services to new construction areas." The Resolution stated that because of the delay in placing new construction on the property tax rolls, current taxes did not generate sufficient revenue to cover these expenses, leaving other District residents to bear the added burden of providing services to new construction.

¶7      The District began assessing new construction on January 14, 2005, the effective date of the Resolution, by sending out invoices that stated:

> The purpose of this [facilities benefit] assessment is to provide funding for the purchase of land and the construction of new fire facilities as needed within the District. This assessment enables the District to recoup property taxes not collected due to delays in placing property improvements, such as a new home or commercial building, on the property tax rolls.

U.S. Home of Arizona Construction Company and U.S. Home Corporation (collectively "U.S. Home"), one of the home builders in the District, refused to pay the assessment. The District filed a complaint to recover the unpaid facilities benefit assessments.

¶8      The superior court granted summary judgment in favor of U.S. Home. The court concluded that a fire district could raise revenue only through taxes, bond elections, and fee

4

schedules. It further found that the items for which a fire district could create fee schedules under A.R.S. § 48-805(B)(14) were "much more limited items . . . which appear to be for a specific service." It held that fees could be charged for actual services rendered, but those charges must reasonably relate to their purpose, and the District's assessment did not satisfy this criterion.

¶9 The District appealed, and the court of appeals reversed and remanded. *Nw. Fire Dist. v. U.S. Home of Ariz. Constr. Co.*, 213 Ariz. 489, 495, ¶ 23, 143 P.3d 1030, 1036 (App. 2006). Relying on cases and statutes from other jurisdictions, the court determined that a facilities benefit assessment is "a special assessment against real property for public improvements." *Id.* at 491, ¶ 8, 143 P.3d at 1032 (quoting *Barratt Am., Inc. v. City of San Diego*, 12 Cal. Rptr. 3d 132, 137 (Cal. Ct. App. 2004)). Under this definition, the court reasoned, the District's fee qualified as a facilities benefit assessment because the District intended to use the money collected to develop facilities to provide services to the construction areas. *Id.* at 491-92, ¶ 8, 143 P.3d at 1032-33.

¶10 In rejecting the superior court's holding that the fee could be assessed only for services rendered, the court of appeals determined that this assessment does provide a service - the guarantee of adequate facilities to respond to an emergency.

5

*Id.* at 492, ¶ 10, 143 P.3d at 1033.  Further, the court found, the lack of limiting language in A.R.S. § 48-805(B)(14) demonstrates the legislature's intent to create a broad power to assess.  *Id.* at ¶ 11.  The court concluded that if the District was not entitled to impose these assessments on property owners that benefited from the District's facilities, the phrase "facilities benefit assessment" would be rendered meaningless. *Id.* at 493, ¶ 14, 143 P.3d at 1034.

¶11     U.S. Home petitioned for review, arguing that the fee imposed is not a valid facilities benefit assessment.  The District responded by arguing that the fee charged is statutorily permitted and that the court of appeals opinion did not give it unregulated power to raise revenue.

¶12     We granted review because this case raises an important issue for the more than 130 fire districts in the state and their residents.  We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).  Whether a particular exercise of power by the District falls within its statutory authority is a question of law, which we review de novo.  *See Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 397, ¶ 5, 64 P.3d 836, 839 (2003).

## II

¶13     Fire districts are constitutional and statutory

entities, much like municipal corporations. *See* Ariz. Const. art. 13, § 7; A.R.S. §§ 48-802 to -834 (2000); *Cal. Portland Cement Co. v. Picture Rocks Fire Dist.*, 143 Ariz. 170, 174, 692 P.2d 1019, 1023 (App. 1984). As such, a fire district can exercise only those limited powers granted to it by the legislature. *Cf. Hohokam Irrigation & Drainage Dist.*, 204 Ariz. at 397, ¶ 6, 64 P.3d at 839; *Local 266, Int'l Bhd. of Elec. Workers v. Salt River Project Agric. Improvement & Power Dist.*, 78 Ariz. 30, 38, 275 P.2d 393, 398 (1954). The revenue-raising power of fire districts – the power at issue here – has been limited by the legislature to issuing and selling bonds, A.R.S. § 48-806 (Supp. 2006); collecting property taxes, *id.* § 48-807(F) (Supp. 2006); and charging fees in accordance with permitted fee schedules, *id.* § 48-805(B)(14). It is this last statutory power on which the District relied in adopting its "facilities benefit assessment."

¶14     The legislature has not defined "facilities benefit assessment." U.S. Home argues that the superior court correctly interpreted this provision narrowly by finding that this assessment could issue only for specific services rendered. The court of appeals, however, afforded this phrase a broader interpretation by stating that it permitted "a special assessment against real property for public improvements." *Nw. Fire Dist.*, 213 Ariz. at 491, ¶ 8, 143 P.3d at 1032 (quoting

*Barratt Am., Inc.*, 12 Cal. Rptr. 3d at 137).

¶15    We need not decide today between these differing interpretations.  Even assuming the court of appeals correctly determined that the legislature intended "facilities benefit assessment" to grant fire districts the power to impose "special assessments," we conclude that the District's fee is not a special assessment.

A

¶16    A "special assessment" is "an assessment against real property based on the proposition that, due to a public improvement of some nature, such real property has received a benefit."  *Barry v. Sch. Dist. No. 210*, 105 Ariz. 139, 140, 460 P.2d 634, 635 (1969) (quoting *State v. Carney*, 139 N.E.2d 339, 340 (Ohio 1956)); *Weller v. City of Phoenix*, 39 Ariz. 148, 151, 4 P.2d 665, 667 (1931) (defining assessments as "special and local impositions on property, made for a public purpose, but fixed in amount with reference to the special benefit which such property derives from the expenditure" (emphasis omitted)).  A special assessment therefore may not be levied against particular property if the property will not receive a specific benefit from the improvement funded by the assessment.  *See Mosher v. City of Phoenix*, 39 Ariz. 470, 480, 7 P.2d 622, 626 (1932), *overruled on other grounds by In re Forsstrom*, 44 Ariz. 472, 493-94, 38 P.2d 878, 887 (1934).  "The rationale of special

8

assessment is that the assessed property has received a special benefit over and above that received by the general public." *J.W. Jones Cos. v. City of San Diego*, 203 Cal. Rptr. 580, 584 (Ct. App. 1984) (quoting *Solvang Mun. Improvement Dist. V. Bd. Of Supervisors*, 169 Cal. Rptr. 391, 395 (Cal. Ct. App. 1980)).

¶17 Because property may be assessed its proportion of specified costs only if it receives a special benefit from the improvement that is different than the benefit received by other properties, any evaluation of a special assessment must begin by reviewing the improvements funded by the assessment and their estimated costs. *Cf.* A.R.S. § 48-577 (2000) (stating that a municipal special assessment requires preliminary plans for improvements and cost estimates and also requires that no lot be assessed more than "its proportion of the estimate"). Without a specific plan and cost estimate, there can be no way of knowing the property owner's share of the improvement costs or whether a particular property will be benefited at all, let alone whether it will receive a benefit different than all other properties in the district.

¶18 The District's Resolution did not set forth or refer to any specific plan for the construction of new facilities. The District thus cannot demonstrate the cost of such facilities or the associated benefit to each assessed property.

¶19 Furthermore, the District has not shown that the funds

9

collected under this assessment will be spent on facilities that uniquely benefit the assessed property. The funds collected were not segregated; instead they were placed into the District's general fund. The District's proposed budget for 2005-06 showed these funds being spent without any indication that they were earmarked for facilities that specially benefited the assessed properties. Moreover, even assuming that the District will eventually use the money for facilities, there is no way to conclude on the current record that the assessed property will benefit in a way that other property within the District does not. The District's general plans to use the funds for facilities to benefit the new construction are not enough. For example, the District could fulfill this aspiration by simply expanding a current fire station or acquiring the adjacent lot for new facilities. In that situation, there would be no special benefit to new construction that would not also be shared by the prior District residents served by that station. *See Mosher*, 39 Ariz. at 480, 7 P.2d at 626.

**B**

¶20     Nonetheless, the District asserts that its facilities benefit assessment did not exceed the power granted by A.R.S. § 48-805(B)(14) because the fee assessed to U.S. Home and others was meant to ensure adequate facilities for new construction. The District further argues that its failure to formulate a plan

for the construction or improvement of facilities to benefit the new construction should not be determinative because its decision is a legislative decision, not one for the judiciary.

¶21     The District's interpretation of "facilities benefit assessment," however, would effectively permit it to circumvent statutory protections for fire district property owners.  Such an interpretation would render the statutory protections largely illusory.  *See Jennings v. Woods*, 194 Ariz. 314, 320, ¶ 21, 982 P.2d 274, 280 (1999) (interpreting statutory provisions so as not to render a provision meaningless).

¶22     For instance, under the District's theory, a fire district could request a lower property tax authorization or issue fewer bonds to appease qualified electors, and then levy a facilities benefit assessment against certain district property owners, such as U.S. Home, to cover the district's facilities costs.   Such an assessment could exceed the three and one-quarter percent property tax cap of A.R.S. § 48-807(F) or the six percent bond cap of A.R.S. § 48-806(D) and thereby evade these statutory limitations.   The assessment would also evade electoral approval and the statutory requirement that proceeds from the sale of bonds be placed in a separate fund and used only for a specific purpose.  *Id.* § 48-806(D), (G).   Without a specific plan to improve or build facilities, the assessed property owners have not only lost these statutory protections,

11

but they also have no assurance that the assessment was necessary or that they will benefit from the facilities they have funded.[2] An interpretation of "facilities benefit assessment" that allows this result cannot have been what the legislature intended in passing A.R.S. § 48-805(B)(14).

¶23    Unlike the court of appeals, we are not persuaded that the political accountability of the District's board offers appropriate protection for District property owners. *See Nw. Fire Dist.*, 213 Ariz. at 492, ¶ 12, 143 P.3d at 1033. The assessment here was not levied against qualified electors of the District. *See* A.R.S. § 48-802(C) (Supp. 2004) (stating that only qualified electors who are district residents may vote in a district election). It was the builder, not a qualified elector, who was charged the assessment upon application for a building permit. Therefore, the public accountability check on this assessment was lacking.

### III

¶24    Finally, the District argues that our opinion in *Home Builders Association of Central Arizona v. City of Scottsdale*, 187 Ariz. 479, 930 P.2d 993 (1997), controls the outcome of this case. We find that opinion distinguishable on several grounds.

---

[2]    Remedying a shortfall in tax revenue through a facilities benefit assessment, as the District did here, raises the same concerns.

12

First, the fee under consideration in *Home Builders* was a development fee. *Id.* at 480, 930 P.2d at 994. Fire districts, unlike municipalities, do not have the power to impose development fees.[3] *See*, *e.g.*, A.R.S. § 9-463.05 (Supp. 2006); *cf. Hohokam Irrigation & Drainage Dist.*, 204 Ariz. at 397, ¶ 6, 64 P.3d at 839 (stating that irrigation districts' powers are limited to those enumerated in the constitution or statutes).

¶25    Second, the ability to impose a development fee is broader than the ability to impose a special assessment. *Home Builders*, 187 Ariz. at 483, 930 P.2d at 997. Specific plans are not required to impose a development fee, unlike a special assessment. *Id.* Because we assume for purposes of this opinion that a facilities benefit assessment is a special assessment, the District's assessment cannot be afforded the same flexibility as the development fee in *Home Builders*.

¶26    Third, the city's plan in *Home Builders* was much more specific than that put forth by the District. The city specifically delineated its program for meeting its future water needs, including how the water would be obtained and estimating

---

[3]    Development fees are designed to "offset costs to [a] municipality associated with providing necessary public services to a development." A.R.S. § 9-463.05(A) (Supp. 2006). They are "designed to assist in raising the capital necessary to meet needs that surely will arise in the foreseeable future but whose precise details may not at the outset be quite clear." *Home Builders*, 187 Ariz. at 483, 930 P.2d at 997.

13

the total costs associated with bringing these resources to the city. *Id.* at 480-81, 930 P.2d at 994-95. The city then determined the cost of bringing each acre-foot of water to the city and the average amount of water certain types of development require. *Id.* at 485, 930 P.2d at 999. The development fee was then calculated based on the estimated cost for providing water to the type of development being charged. *Id.*

¶27    Here, the District has not created a plan for any particular facilities to benefit those assessed, nor has it determined what facilities are necessary for the new construction. Therefore, the District cannot accurately determine how much to assess the property owners because it has no estimated cost for the necessary facilities. Although plans supporting special assessments are required to be more specific than those for development fees, *id.* at 483, 930 P.2d at 997, the District's plan is far less developed than that in *Home Builders*. Thus, the District's reliance on *Home Builders* is unavailing.

## IV

¶28    For the foregoing reasons, we hold that the "facilities benefit assessment" promulgated by the District was not authorized by A.R.S. § 48-805(B)(14), and is therefore

14

invalid.[4]  Accordingly, we affirm the trial court's grant of summary judgment in favor of U.S. Home and vacate the opinion of the court of appeals.

_____
                    Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice

---

[4]    Because we conclude that the District's assessment exceeded its authority under A.R.S. § 48-805(B)(14), we need not address the other issues raised by the parties.