JUDGE HOWE,
opinion of the Court:
¶1 In 2011, the Arizona Legislature enacted Senate Bill 1609, which made certain changes to the Elected Officials’ Retirement Plan. The Bill changed the formula for calculating future benefit increases for retired Plan members and increased the amount that employed Plan members must contribute toward their pensions. Retired members of the Plan challenged the provision changing the formula for calculating future benefit increases. They argued that the change violated the Pension Clause of the Arizona Constitution, article 29, section 1, which provides that “public system retirement benefits shall not be diminished or impaired.”[1] We agreed, holding that this provision was unconstitutional as applied to the Plan’s retired members. See Fields v. Elected Officials’ Ret. Plan, 234 Ariz. 214, 320 P.3d 1160 (2014).
¶2 Employed members of the Plan also challenged the Bill. First, they argued that the unilateral changes to the benefit increases formula and to the amount they were required to contribute toward them pensions violated the Pension Clause for the reasons set forth in Fields. Second, relying on our long-standing decision in Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 641 (1965), they argued that because their pensions were part of their employment contracts that vested when they began employment, the Legislature could not unilaterally change the terms of their pensions to their detriment. The trial court granted the employed members summary judgment, invalidating the provisions at issue. The court denied the members’ request for attorneys’ fees and prejudgment interest, however. The court also denied the members’ request to have the judgment ran against the State, which had intervened in the case. EORP and the State appealed and the members cross-appealed.
¶3 Upon transfer from the court of appeals, we affirm the granting of summary judgment to the employed Plan members. As we held in Fields, the Bill’s change to the benefit increases formula violates the Pension Clause because it “diminishes and impairs” the employed members’ pension benefits. The Bill’s changes to the benefit increases formula and the contribution rate also violate our holding in Yeazell because the Legislature cannot unilaterally change the terms of the members’ pension contracts once their rights to those terms have vested at the beginning of the membei’s’ employment. Contrary to the trial court’s ruling, however, we find that the employed members are entitled to attorneys’ fees and prejudgment interest and that the judgment must ran against the State as well as the Plan.
I. FACTS AND PROCEDURAL HISTORY
¶4 In 1985, the Legislature established the Plan to provide pension benefits for elected officials, including judges. A.R.S. §§ 38-801(15), -802, -804. The Plan has four funding sources: employer contributions, employee contributions, court filing fees, and investment proceeds. A.R.S. § 38-810. The employee contribution rate was set by statute initially at 6%, with the employer being responsible for contributing the remaining amount necessary to fund a defined benefit upon retirement. See A.R.S. § 38-810(A) (1985). In 1987, A.R.S. § 38-810(A) was amended to increase the employees’ contribution to 7%. See 1987 Ariz. Legis. Serv., ch. *37 146, § 4, codified at A.R.S. § 38-810(A) (1987).
¶5 During the 1990s, the Plan generated investment returns that far exceeded the ae-tuarially assumed rate of return. See PSPRS Plan’s Funding Status Report with Options for Improving Funding and Reducing Required Contributions, at 2 (2010). During the same period, however, the Plan’s financial health was being “seriously compromised” because the Plan was gradually concentrating its investments in securities of high technology and telecommunications companies. Id. In March 2000, the prices of technology and telecommunications securities began to “decline rapidly.” Id. This made the Plan vulnerable to major financial shocks in 2000, 2008, and 2009. By fiscal year 2011, the Plan’s funding ratio—the actuarial value of the Plan’s assets divided by its actuarial accrued liabilities—was 62.1%, a drop from 121% in 1998 and 101.9% in 1986. Accordingly, the State’s contribution level necessarily increased, while the employee contribution rate remained constant, as set by statute.
¶6 In 2011, attempting to address continued rising costs, the Legislature enacted the Bill, making several unilateral changes to the Plan to be applied retroactively from June 30, 2011. See 2011 Ariz. Legis. Serv., ch. 357. One change the Bill made was to the statutory formula for calculating permanent benefit increases under A.R.S. § 38-818. The Bill amended AR.S. § 38-818.01 to prohibit the transfer of any investment earnings that exceed the rate of return to the reserve fund and changed the formula used to calculate the permanent benefit increases, increasing the rate of return necessary to trigger a benefit increase. See A.R.S. § 38-818.01(B).
¶7 We resolved whether the Bill’s change to the statutory formula for calculating permanent benefit increases was constitutional with respect to retired members in Fields, 234 Ariz. at 221 ¶ 34, 320 P.3d at 1167. We held that the formula was a “benefit” for purposes of the Pension Clause and that the Bill’s change to the formula violated the clause because it diminished and impaired the retired members’ retirement benefits. Id at 220-21 ¶¶ 29, 34, 320 P.3d at 1166-67. Because the Bill retroactively prevented the transfer of funds to the Plan’s reserve, the Plan could not fund expected benefit increases, and retired members’ benefit increases consequently were reduced or eliminated in 2011,2012, and 2013. Id. at 221 ¶ 35, 320 P.3d at 1167. The Bill also made it less likely that retired members would receive future benefits increases because of the raised rate of return required to fund an increase. Id. at ¶ 36, 320 P.3d at 1167.
¶8 The Bill made another change that was not at issue in Fields, but is here. The Bill amended the employee contribution rate structure by increasing the rate to 10% for fiscal year 2011-2012 and to 11.5% for fiscal year 2012-2013. A.R.S. § 38-810(F)(l)-(3) (2011). It also set the rate for fiscal year 2013-2014 and each fiscal year thereafter to the lesser of 13% of the member’s gross salary or 33.3% of the sum of the member’s contribution rate from the preceding fiscal year and the normal cost plus the actuarially-determined amount required to amortize the employer’s unfunded accrued liability. A.R.S. § 38-810(F)(4) (2011).
¶9 In November 2011, Judges Philip Hall—who has since retired—and Jon W. Thompson, on behalf of themselves and as representatives of a class of employed Plan members and beneficiaries as of July 20, 2011, the Bill’s effective date (collectively, “Class Members”), sued the Plan and the Board of Trustees of the Public Safety Personnel Retirement System (collectively, “EORP”). The Class Members alleged that the Bill violated Yeazell, the Pension and Judicial Salary Clauses of the Arizona Constitution, and the Contract Clauses of the Arizona and United States Constitutions. The State intervened to defend the Bill. After the State intervened, the Class Members notified the trial court and the parties that they would seek relief, including attorneys’ fees, expenses, and taxable costs, not only from EORP but also from the State.
¶10 After intervening litigation, the parties each moved for summary judgment. The Class Members maintained—as relevant here—that the Bill violated Yeazell by unilaterally modifying their interests in their pensions, which had vested at the outset of their employment with the State, and violated the *38 Pension Clause by diminishing their entitled benefits. EORP and the State responded that the Class Members’ rights had not yet vested and therefore the Legislature could modify the pension plan as it saw fit. EORP and the State noted that in 2000, the Legislature had enacted A.R.S. § 38-810.02 (“the vesting statute”), providing that EORP benefits vest at the time the employee applies for benefits or retires. EORP and the State argued that because the statute applies retroactively, it has become part of the Class Members’ employment contracts with the State, and accordingly, their rights do not vest until they retire.
¶11 The trial court granted the Class Members’ motion for summary judgment and denied EORP’s and the State’s cross-motions for summary judgment. The court held that the Pension Clause protected the benefit increases formula and the 7% prior contribution rate because they constituted “benefits” that were always part of the members’ contractual relationship with the State, The court rejected EORP’s argument that the vesting statute preempted the members’ contractual rights and their rights under the Pension Clause. The court concluded that the statute applies only to “ordinary” vesting, meaning that a member has no right to receive retirement benefits until the member fulfills specific conditions and retires. The court thus granted the Class Members the relief they sought.
¶12 The parties then asked for a stay pending our decision in Fields, which the trial court granted. After considering the effect of Fields, the court denied the Class Members’ request for attorneys’ fees under A.R.S. § 12-341.01 because it concluded that the action arose out of constitutional and statutory—not contractual—obligations. The court also denied the Class Members’ request for prejudgment interest because it found that EORP was not unjustly enriched and should not be charged interest on money it legally could not pay. The court further denied the Class Members’ request that relief run against the State because it found that the State had intervened only to defend the Bill’s constitutionality and the Class Members’ notice seeking relief against EORP and the State was insufficient to assert claims against the State.
¶13 EORP and the State timely appealed the summary judgment in the Class Members’ favor, and the Class Members timely cross-appealed the judgment denying attorneys’ fees, prejudgment interest, and relief against the State. We granted the parties’ joint petition to transfer the case under Arizona Rule of Civil Appellate Procedure 19(a). The funding of public pensions raises issues of statewide importance, and we have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.
II. DISCUSSION
ISSUES ON APPEAL
¶14 EORP and the State argue that the trial court erred by finding that the Bill violates the Pension Clause and Yeazell.[2] We review de novo the constitutionality of statutes and, if possible, construe them to uphold them constitutionality. State v. Glassel, 211 Ariz. 33, 51 ¶ 65, 116 P.3d 1193, 1211 (2005). We presume that a statute is constitutional, and the “party asserting its unconstitutionality bears the burden of overcoming the presumption.” [3] Eastin v. Broomfield, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977). As discussed below, we hold that (1) the Bill’s *39 change to the benefit increases formula provision violates the Pension Clause by diminishing and impairing a benefit to which the Class Members are entitled and (2) its changes to the benefit increases formula and the contribution rate provisions are unconstitutional under Yeazell because it unilaterally modified the Class Members’ employment contracts with the State to the Class Members’ detriment.
A. The Pension Clause
¶15 EORP and the State first argue that the trial court erred because the benefit increases formula and the prior contribution rate are not “benefits” and therefore not protected by the Pension Clause. Regarding the benefit increases formula, this Court concluded in Fields that permanent benefit increases and the benefit increases formula were “benefits” as used in the Pension Clause. See 234 Ariz. at 219, 220 ¶¶ 23, 26, 320 P.3d at 1165, 1166. The reasoning in Fields applies with equal force to the Class Members because the Bill’s change to A.R.S. § 38-818’s formula diminishes and impairs the Class Members’ retirement benefits just as it does for retired members. See id. at 221-22 ¶¶ 34-36, 320 P.3d at 1167-68. The Bill’s amendment regarding the benefit increases formula therefore violates article 29, section 1(C), of the Arizona Constitution. Regarding the prior contribution rate, however, because we hold that the prior contribution rate is protected under Yeazell, see infra § B, we need not decide whether it is also protected under the Pension Clause. See Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng’g, P.C., 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) (“It is a fundamental rule of judicial restraint ... that this Court will not reach constitutional questions in advance of the necessity of deciding them.”).
B. A Binding Contractual Relationship
1. Yeazell v. Copins
¶16 EORP and the State also argue that the trial court erred in applying Yeazell because “Yeazell enshrined the vesting statute as part of the [member’s employment] contract, authorizing the Legislature as a matter of the express contract to make reasonable prospective changes like adjusting the contribution rate.” Consequently, they argue, Yeazell does not “apply constitutional protections for pension lights” and also does not affect whether the Pension Clause protects the benefit increases formula and the prior contribution rate. The Class Members counter that the Bill violates Yeazell because it seeks to unilaterally and retroactively modify their pension terms as provided in their employment contracts when they began services.
¶17 Yeazell established that the State’s promise to pay retirement benefits is part of its contract with the employee. See 98 Ariz. at 113-17, 402 P.2d at 644-47. By accepting a job and continuing to work, the employee has accepted the State’s offer of retirement benefits, and the State may not impair or abrogate the terms of that contract without obtaining the employee’s consent. Id. Yeazell involved a Tucson police officer’s appeal of a local board’s decision setting his pension benefits based on a 1952 amendment to the pension statute in effect at the time of his retirement, rather than on the statute in effect when he was hired in 1937. Id. at 111, 402 P.2d at 542. Yeazell argued that the 1937 statute, requiring him to contribute 2% of his salary and granting him a monthly pension equal to one-half of his average monthly compensation for one year immediately before his retirement date, was the applicable law from which to determine his retirement benefits—not the 1952 statute. Id. His benefit under the 1937 statute would have been $7.21 more per month than his benefit under the 1952 statute. Id.
¶18 The issue in Yeazell was whether the Legislature could unilaterally change statutorily-created retirement benefits that were part of the terms of an employee’s employment contract when the employee began service. See id. at 111-12, 402 P.2d at 542-43. The majority rule in the United States at the time was that pensions—characterized as “gratuities” granted at the sovereign’s benevolent will—could be modified because the employees had no vested right to them. Id. at 112, 402 P.2d at 543. Thus, pension plans could be amended or changed as a legislature *40 saw fit. Id. Yeazell recognized, however, that treating retirement benefits as “gratuities” posed a problem in Arizona because of the state’s Gift Clause, id. at 112, 402 P.2d at 543, which, as relevant here, prohibits state entities from giving or lending its credit “in the aid of, or makfing] any donation or grant, by subsidy or otherwise” to any individual, Ariz. Const, art. 9, § 7.
¶19 Yeazell acknowledged that under the Gift Clause, “[t]he state may not give away public property or funds; it must receive a quid pro quo which, simply stated, means that it can enter into contracts for goods, materials, property and services.” 98 Ariz. at 112, 402 P.2d at 543. Thus, to uphold Arizona retirement plans under the Atizona Constitution, this Court concluded that pensions were not gratuities, but were, in the nature of contracts, viewed as deferred compensation for services rendered. Id. at 113-15, 402 P.2d at 543-45. We reasoned that a pension is a gratuity only when it is granted for services previously rendered, but when the services are rendered under a pension statute, “the pension provisions become a part of the contemplated compensation for those services, and so in a sense a part of the contract of employment itself.” Id. at 113, 402 P.2d at 544; see also Proksa v. Ariz. State Sch. for the Deaf & the Blind, 205 Ariz. 627, 631 ¶ 21, 74 P.3d 939, 943 (2003) (“Put differently, in the retirement benefits area, given the Gift Clause of our constitution, this court effectively found an ‘adequate expression of an actual intent of the State to bind itself,’ because any finding to the contrary would render the statutes unconstitutional.”) (citation omitted).
¶20 Based on Yeazell and its Gift Clause underpinnings, the law in Arizona has been clear since 1965 that public employees are contractually entitled to the retirement benefits specified in their initial employment contract. See, e.g., Proksa, 205 Ariz. at 630 ¶ 16, 74 P.3d at 942; Norton v. Ariz. Dep’t of Pub. Safety Local Ret. Bd., 150 Ariz. 303, 723 P.2d 652 (1986); Thurston v. Judges’ Ret. Plan, 179 Ariz. 49, 876 P.2d 545 (1994). This protected relationship prevents the Legislature from changing the employee’s pension terms at will after the terms have vested, see Yeazell, 98 Ariz. at 115-16, 402 P.2d at 545-46, and provides public employees reasonable expectations that their retirement benefits are protected by the law of contracts, see id. at 117, 402 P.2d at 546 (holding that a public employee “ha[s] the right to rely on the terms of the legislative enactment of the [pension plan] as it existed at the time he entered the service,” and that “subsequent legislation may not be arbitrarily applied retroactively to impair the contract”). The parties may subsequently agree to modify the contract, of course, but the State may not unilaterally change the contractual terms unless the change benefits the employee. See Thurston, 179 Ariz. at 51, 876 P.2d at 547 (recognizing that “when the amendment [to retirement benefits] is beneficial to the employee or survivors, it automatically becomes part of the contract by reason of the presumption of acceptance”). Under that circumstance, the employee is deemed to have ratified the beneficial change, which becomes part of the employment contract. Id.
¶21 For Yeazell, we concluded that the Legislature had unilaterally amended the 1937 statute, which had become a part of his employment contract—a contract that included the 2% contribution rate and a pension calculation based on his last year’s earnings. Tucson therefore could not retroactively vary the pension terms without Yeazell’s consent. Yeazell, 98 Ariz. at 116, 402 P.2d at 546. We explained that although an employee may not qualify to receive his pension benefits until he has performed the necessary condition— completion of the requisite years of service— this did not mean that from the moment Yeazell entei'ed service as a Tucson police officer, a firm and binding contract did not exist between him and the City of Tucson. Id. at 114, 402 P.2d at 544.
¶22 Although acknowledging that Yeazell established a contractual relationship between the State and public employees regarding the employees’ pensions, EORP and the State nonetheless assert that Yeazell provides only that “the employees’ contractual relationship vested at the time they began services [and] does not automatically mean that specific benefits vested at that time, without regard to the contemporaneous *41 terms of the contract.” But the specific benefits—that is, the terms of the legislative enactment relating to the employees’ pensions as they existed when the employees began their services—are exactly the type of benefits Yeazell protects:
The legislature amended the 1937 statute which was a part of appellant’s contract of employment with the City of Tucson. Tucson now attempts to apply the changes retroactively to vary the terms of its contract with appellant. We hold the changes, if applied to appellant without his assent, would constitute an alteration, a modification of his contract. This Tucson may not do.
Id. at 116, 402 P.2d at 646. Yeazell thus protects the specific terms of a public pension contract from unilateral retroactive alteration. Even the dissent in Yeazell recognized this as the Court’s holding. See id. at 118, 402 P.2d at 547 (Udall, J., dissenting) (stating that the majority’s holding was based on the “erroneous premise that there was created upon employment an absolute binding ‘contract’ to a specific pension,” which meant that the majority was holding that “the legislature, by subsequent enactment, can modify the original pension terms only if the employee consents”).
¶23 The Bill’s changes to the Class Members’ pension contracts are consequently invalid under Yeazell. When the Class Members were elected or appointed as judges, they entered a contractual relationship with the State regarding the public retirement system of which they became members. Their retirement benefits were a valuable part of the consideration the State offered upon which the Class Members relied when accepting employment. See Fields, 234 Ariz. at 220 ¶ 27, 320 P.3d at 1166 (“As in Yeazell, Fields has a right in the existing formula by which his benefits are calculated as of the time he began employment and any beneficial modifications made during the course of his employment.”). Under their contracts, the Class Members received retirement benefits as terms of their contracts for which they agreed to share the cost with their employers. Thus, an increase in the Class Members’ proportionate share of the contribution rate above 7% and the change in the statutory formula granting permanent benefit increases without the Class Members’ consent are breaches of that contract and infringe upon the Class Members’ contractual relationship with the State. See Thurston, 179 Ariz. at 52, 876 P.2d at 548 (“Where the modification is detrimental to the employee, it may not be applied absent the employee’s express acceptance of the modification because it interferes with the employee’s contractual rights.”). By including in its scope Class Members who were Plan members at the time of enactment, the Bill retroactively, unilaterally, and substantially changed the contract terms that the parties previously agreed to. This violates Yeazell.
¶24 EORP and the dissent both argue that this is not the end of the analysis. They note that Yeazell commented that if a governmental entity shows that its pension plan is actuarially unsound, “the law governing mutual mistakes of fact” applies. See 98 Ariz. at 116, 402 P.2d at 546. They interpret this comment to mean that if EORP and the State could show that the parties to the Plan made a mistake about the Plan’s financial viability, the Bill’s retroactive changes would be permissible modifications of the Plan under Yeazell. But EORP and the dissent over-read Yeazell’s comment. Although this Court indeed said that the law of mistakes of fact applied to a pension plan if it was actuarially unsound, we expressly and carefully declined to address the consequences of such an application: ‘We do not, however, mean to imply what rights or remedies might be available to either party in a situation where it is established that a retirement plan is actuarially unsound. This is a matter beyond the issues of the present litigation.” Id. at 117, 402 P.2d at 546.
¶25 This Court’s reticence was appropriate. While the defense of mutual mistake of faet applies in any contract dispute, EORP and the State are unable to prove that defense as a matter of law. That defense requires that the party seeking to void a contract prove that (1) the parties made a mistake about a basic assumption on which they made the contract, (2) the mistake had a material effect on the exchange of per *42 formances, and (3) the party seeking avoidance does not bear the risk of the mistake. Restatement (Second) of Contracts § 152(1) (1981); see also Renner v. Kehl, 150 Ariz. 94, 97, 722 P.2d 262, 265 (1986) (applying § 152 in resolving claim of mutual mistake of fact). EORP and the State cannot prove two of these elements.
¶26 First, EORP and the State cannot show that the parties made a mistake about a basic assumption of the Plan, They claim (and the dissent accepts, see infra ¶¶ 73,104) that the mistake was the parties’ shared assumption that the Plan was actuarially sound, meaning that the parties mistakenly believed that the Plan’s investment returns would be sufficient to maintain the Plan’s actuarial soundness without changing the benefit increases formula or the employee contribution rate. But disappointment about anticipated investment returns does not qualify as a mistake. See Restatement (Second) of Contracts § 152 cmt. b (noting that “market conditions and the financial situation of the parties are ordinarily not such assumptions,” and “mistakes as to market conditions or financial ability do not justify avoidance under the rules governing mistake”).[4] Moreover, the Plan’s actuarial soundness is within the Legislature’s control. The Legislature is responsible for setting the amounts of the employer contributions and court filing fees, see A.R.S. § 38-810(B)-(D), and the Legislature may not “reduce the amount of the contributions to the fund if thereby the soundness of the fund is jeopardized,” Yea-zell, 98 Ariz. at 116, 402 P.2d at 546. If the Plan is underfunded because of inadequate investment returns, the State may increase employer contributions and filing fees.
¶27 Second, even if unanticipated reductions in investment returns could qualify as a mistake, EORP and the State cannot show that the State did not bear the risk that this mistake might occur. The Legislature designed the Plan so that the State accepted the risk of variable investment returns. When investment returns are high, the State’s funding obligation through employer contributions is reduced or eliminated, as happened from 1998 to 2001. But when investment returns are low, the State’s funding obligation is necessarily increased. In either situation, however, the Class Members’ contribution rate remains fixed. Thus, the Class Members are not permitted to obtain any cost savings from higher investment returns, but they likewise are not required to pay more because of lower investment returns. The reward and risk of investment returns falls on the State. This is simply the nature of defined benefit plans. See Hughes Aircraft Co. v. Jacobson, 625 U.S. 432, 439, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (stating that in a defined benefit plan “the employer typically bears the entire investment risk” and “must cover any underfunding as the result of a shortfall that may occur from the plan’s investments”). Because the State bears the risk of the claimed mistake, the State cannot rely on the defense of mutual mistake of fact to justify changes to the Plan.[5]
*43 ¶28 The dissent also maintains that the Bill’s changes to the Plan may be upheld under the Contract Clauses of the United States and Arizona Constitutions. U.S. Const, art. 1, § 10; Ariz. Const, art. 2, § 25. See infra ¶ 107. As we have explained, however, the Bill’s unilateral and retroactive changes to the vested terns of the Plan violate Yea-zell and the Gift Clause. See supra at ¶¶ 19-23. Consequently, analyzing whether the Bill would pass review under the Contract Clauses were it not for Yeazell and the Gift Clause is unnecessary and violates the principle of judicial restraint. See Superintendent, Mass. Carr. Inst. v. Hill, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (stating that judicial restraint requires “avoid[ing] unnecessary resolution of constitutional issues”).
¶29 The dissent’s substantive concerns about our holding are, respectfully, not well taken. The dissent, however, raises one other concern that merits discussion. The dissent discusses at great length the perilous state of the Plan and this Court’s need to defer to the Legislature’s policy choices in making the Plan solvent, see infra ¶¶ 58, 64-66, 108, effectively asking this Court to get out of the way and let the Legislature fix the problem. This argument has been raised in other eases involving judicial pension reform, when state legislatures have run afoul of state constitutional provisions that preclude retroactive changes to judicial pensions. See In re Pension Reform Litig., 392 Ill.Dec. 1, 32 N.E.3d 1, 19-26 (2015); DePascale v. State, 211 N.J. 40, 47 A.3d 690, 693, 704-05 (2012).
¶30 But this is not a matter of refusing to defer to the Legislature on an issue of public policy. It is a matter of requiring the Legislature to follow the Arizona Constitution in setting that policy. We recognize that the financial soundness of public pension systems is a matter of great public importance. We acknowledge that devising measures to guarantee the Plan’s financial stability is difficult and fraught with unpleasant policy choices. But whatever measures the Legislature enacts to address the problem still must comport with the Arizona Constitution. See In re Pension Reform Litig., 32 N.E.3d at 19 (stating that “[njeither the legislature nor any executive or judicial officer may disregard the provisions of the constitution even in ease of a great emergency”) (citation omitted); DePascale, 47 A.3d at 704 (noting that a legislature has the right to implement its policy choices in dealing with critical issues but that those choices “must be made within a constitutional framework”). In examining the Bill’s constitutionality, we are not meddling in the Legislature’s policy choices. We are fulfilling our duty to ensure that the Arizona’s constitutional framework is respected and observed in making those choices. See Pool v. Superior Court, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984) (noting that interpreting the state constitution is this Court’s responsibility). The provisions of the Bill at issue here are contrary to Arizona’s constitutional framework and consequently invalid.
2. The Vesting Statute
¶31 EORP and the State further assert that although Yeazell established a contractual relationship between the State and its employees regarding pensions, the vesting statute, enacted in 2000, is part of the employment contract for any employee hired after that date and allows the Legislature to modify the pension terms for members before they retire. The vesting statute provides:
A. Because the plan as enacted at a particular time is a unique amalgam of rights and obligations having a critical impact on the actuarial integrity of the plan, the legislature intends that the plan as enacted at a particular time be construed and applied as a coherent whole and without reference *44 to any other provision of the plan in effect at a different time.
B. The plan was established in order to provide a uniform, consistent and equitable statewide program for those eligible elected officials as defined by the plan. A member of the plan does not have a vested right to benefits under the plan until the member files an application for benefits and is found eligible for those benefits. An eligible claimant’s right to benefits vests on the date of the member’s application for those benefits or the member’s last day of employment under the plan, whichever occurs first.
A.R.S. § 38-810.02. This Court has previously stated that rights legally vest “when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest.” Hall v. A.N.R. Freight Sys., Inc., 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986); Thurston, 179 Ariz. at 50-51, 876 P.2d at 546-47. “A vested property right is a right which is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust.” Aranda v. Indus. Comm’n of Ariz., 198 Ariz. 467, 471 ¶ 18, 11 P.3d 1006, 1010 (2000) (internal quotation marks and citation omitted). Thus, once substantive rights have vested, they cannot be impaired. Hall, 149 Ariz. at 140, 717 P.2d at 444. And lights that are legally vested differ from rights that are contingently vested, that is, ones that only “come into existence on an event or condition which may not happen or be performed until such other event may prevent their vesting.” Thurston, 179 Ariz. at 50, 876 P.2d at 546; see also Fund, Manager, Pub. Safety Pers. Ret. Sys. v. Phx. Police Dep't Pub. Safety Pers. Ret. Sys. Bd., 151 Ariz. 487, 490, 728 P.2d 1237, 1240 (App. 1986) (listing employment rights that do not vest until the “condition” of service is satisfied, including accidental disability pension, unearned annual leave, vacation credits, and sick leave).
¶32 EORP and the State argue that the term “vesting” as used in the statute refers to legal vesting and operates to permit a unilateral change to an employment contract. But if we were to accept their position, the vesting statute would alter earlier established substantive rights to particular retirement benefits, violating Yeazell. Thus, the vesting statute is constitutional only if it refers to contingent vesting. See Jones v. Sterling, 210 Ariz. 308, 314-15 ¶ 27, 110 P.3d 1271, 1277-78 (2005) (providing that when we can avoid constitutional doubt by interpreting a statute in a manner that does no violence to its text, we will adopt that interpretation); Kotterman v. Killian, 193 Ariz. 273, 284 ¶ 31, 972 P.2d 606, 617 (1999) (“[W]e resolve all uncertainties [regarding a statute] in favor of constitutionality.”). Our interpretation preserves the statute’s constitutionality because it does not affect the earlier established substantive right to particular retirement benefits. See In re Shane B., 198 Ariz. 85, 87 ¶ 8, 7 P.3d 94, 96 (2000) (providing that an exception to the general prohibition on retroactive application of statutes is that “a statute does not have impermissible retroactive effect if it is merely procedural and does not affect an earlier established substantive right”).
¶33 Consequently, under Yeazell and the vesting statute, a public employee’s interest in a retirement benefit or pension becomes a right or entitlement at the outset of employment, but the right to begin collecting pension benefits is contingent upon completing the requirements for retirement eligibility. See Fields, 234 Ariz. at 221 ¶ 31, 320 P.3d at 1167 (providing that although the right to receive a pension “vest[s] upon acceptance of employment,” the pension is “subject to conditions precedent, such as completing the term of employment”); Krucker v. Goddard, 99 Ariz. 227, 230, 408 P.2d 20, 22 (1965) (providing that a plan member’s right to withdraw contributions vested because he “had fulfilled every condition precedent to having his contributions returned”); Cross v. Elected Officials Ret. Plan, 234 Ariz. 595, 600 ¶ 12, 325 P.3d 1001, 1006 (App. 2014) (“When the Plan accepts a member’s application for retirement, pension rights Vest’ in that only then may the member begin to receive the benefits.”). Consequently, because the Class Members have a binding contract under Yea-zell and because the employees and the State have not agreed to modify that contract, the vesting statute, by itself, does not permit the *45 Legislature to unilaterally change the terms of that contract to the employees’ detriment. Accordingly, the Bill’s changes to the benefit increases formula and the contribution rate provisions violate Yeazell by unilaterally modifying the Class Members’ contracts with the State.
ISSUES ON CROSS APPEAL
A. Attorneys’ Fees
¶34 On cross-appeal, the Class Members first argue that they are entitled to attorneys’ fees incurred before the trial court under A.R.S. § 12-341.01 because the action arose out of contract. EORP counters that A.R.S. § 12-341.01 is inapplicable because the action arose from constitutional or statutory obligations, not contractual obligations, even though the members’ employment contracts were implicated. We review de novo the applicability of A.R.S. § 12-341.01. See Ahwatukee Custom Estates Mgmt. Ass’n, Inc. v. Bach, 193 Ariz. 401, 402 ¶ 5, 973 P.2d 106, 107 (1999).
¶35 Section 12-341.01(A) provides that a court may award reasonable attorneys’ fees to the successful party in “any contested action arising out of a contract, express or implied.” When questions of contract are combined with other questions, judicial analysis whether the action is sufficiently contractual to invoke A.R.S. § 12-341.01(A) “has aptly focused on the substance of the action and the statutory policy to mitigate the burden of the expense of litigation to establish a just claim or defense.” A.H. By & Through White v. Ariz. Prop. & Cas. Ins. Guar. Fund, 190 Ariz. 526, 529, 950 P.2d 1147, 1150 (1997) (internal quotation marks and citation omitted). The mere existence of a contract somewhere in the transaction is insufficient to support a fee award. Id. That is, “when the cause of action arises from statutory rather than contractual obligations, the peripheral involvement of a contract does not require the application of [A.R.S.] § 12-341.01(A).” Id. (internal quotation marks and citation omitted).
¶36 Although this action might first appear to arise from constitutional or statutory interpretation, as EORP urges, a closer examination of the operation of those contractual provisions reveals otherwise. Sections 38-810 and 38-818 are part of the Plan’s statutory scheme to provide retirement benefits for elected officials. A.R.S. § 38-802. The Plan’s fund is used “exclusively for payment of benefits to retired members or their beneficiaries” and “for payment of the administration, operation and investment expenses of the plan.” Id.
¶37 As recognized in Yeazell, because the Gift Clause forbids the Legislature from providing gratuities, the right to receive retirement benefits necessarily arose as a condition of the employee’s contract of employment. See 98 Ariz. at 114, 402 P.2d at 544. The Plan is therefore a creature of statute that assumes the contractual obligations between the State and public employees and exists to administer the statutorily-imposed duties of generating assets for benefit payments to retired members or their beneficiaries. Thus, the Plan’s relationship with the Class Members is governed by the members’ employment contracts with the State. Section 12-341.01 is therefore applicable to disputes between the Plan and Class Members because the Plan’s obligation is determined by the underlying employment contracts. See Pendergast v. Ariz. State Ret. Sys., 234 Ariz. 535, 542 ¶ 23, 323 P.3d 1186, 1193 (App. 2014) (providing that a public employee was entitled to attorneys’ fees on appeal when the Arizona State Retirement System appealed the trial court’s finding that application of a statute limiting the employee’s purchase of credited service violated the Pension Clause, because the matter arose out of contract). Consequently, because this action arose out of the contractual relationship between the Class Members and the State, it arose out of contract and is properly within the scope of the attorneys’ fees statute.
B. Prejudgment Interest
¶38 The Class Members next contend that they are entitled to prejudgment interest on the principal amounts due under the judgment. EORP counters that the Class Members are not entitled to such an award because EORP cannot be charged in *46 terest on money it was not legally obligated or able to pay and that the Plan statutes provide the sole remedy for the Class Members. We review de novo whether a party is entitled to prejudgment interest. Gemstar Ltd. v. Ernst & Young, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996).
¶39 Although the trial court found that awarding prejudgment interest in this case would not serve the purposes of prejudgment interest, “prejudgment interest on a liquidated claim is a matter of right” in a contract action. Metzler v. BCI Coca-Cola Bottling Co., 235 Ariz. 141, 144 ¶ 11, 329 P.3d 1043, 1046 (2014) (citation and quotation marks omitted). A claim is liquidated “if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.” Schade v. Diethrich, 158 Ariz. 1, 14, 760 P.2d 1050, 1063 (1988) (citation omitted).
¶40 Here, the principal amounts due are liquidated because they may be computed with exactness. One principal amount due is the excess payment contributions made by all Class Members. The other principal amount due is the delayed payments of permanent benefit increases under the former benefit increases formula to judges who have retired before this action has concluded. These amounts are readily determinable. Consequently, because the principal amounts due can be computed with exactness, the Class Members are entitled to prejudgment interest on those amounts at the rate determined pursuant to A.R.S. § 44-1201(F) (setting the rate for prejudgment interest).
C. Relief Also Against the State
¶41 The Class Members argue finally that judgment should also run against the State because the State voluntarily intervened and actively litigated the case. The State counters that the Class Members will obtain all the relief to which they may be entitled from EORP and that it intervened for the limited purpose of defending the Bill’s constitutionality. We hold that under the facts here, relief should also run against the State.
¶42 Arizona courts have previously held that intervenors may seek relief in civil rights actions, have judgments run against them, and be the prevailing party for purposes of the attorneys’ fees statute. See, e.g., Civil Rights Div. of Ariz. Dep’t of Law v. Super. Ct. In & For Pima Cty., 146 Ariz. 419, 426-27, 706 P.2d 745, 752-53 (App. 1985) (providing that attorneys’ fees which the Legislature intended could be recovered in civil rights actions are a form of relief that may be sought only by individual plaintiffs or intervenors); Ariz. Ctr. for Law in Pub. Interest v. Hassell, 172 Ariz. 356, 371-72, 837 P.2d 158, 173-74 (App. 1991) (allowing judgment to run against intervenor-defendants and awarding plaintiffs attorneys’ fees against defendants and intervenor-defen-dants under the private attorney general doctrine); McKesson Chem. Co., a div. of Foremost-McKesson, Inc. v. Van Waters & Rogers, 153 Ariz. 557, 739 P.2d 211 (App. 1987) (remanding for the trial court to determine whether intervenor-defendant was entitled to attorneys’ fees as prevailing party and awarding intervenor-defendant attorneys’ fees incurred on appeal).
¶43 Therefore, relief can run against an intervenor-defendant. Here, the State elected to intervene as a defendant—referring to itself as “Intervenor Defendant” in several pleadings—and fully participated in this litigation, as well as in Fields. Although the Class Members did not amend their complaint to assert a claim against the State, they did notify the parties that they would seek relief against EORP and the State, “It would be hypertechnical and unjust to preclude [Class Members] from recovering [relief] that they have earned, merely for failure to amend their complaint to expressly include [the State] within their demand for judgment.” Hassell, 172 Ariz. at 371-72, 837 P.2d at 173-74. Consequently, under the facts presented, relief should also run against the State.
III. CONCLUSION
¶44 For the foregoing reasons, we affirm the trial court's judgment with respect to the unconstitutionality of the two provisions of the Bill at issue, but reverse with respect to *47 the court’s denial of attorneys’ fees, prejudgment interest, and relief against the State. On appeal, the Class Members request attorneys’ fees pursuant to A.R.S. § 12-341.01. In our discretion, we deny their request.

. This provision was subsequently amended by Laws 2016, S.C.R. 1019, § 1, effective May 26, 2016. This amendment pertains only to the Public Safety Personnel Retirement System established by Chapter 38, Article 4.1, and thus does not affect the resolution of this case.

. The Class Members argue that even if the Bill does not violate the Pension Clause and Yeazell, it is still unconstitutional under the Contract Clauses of the United States and Arizona Constitutions and the Judicial Salary Clause of the Arizona Constitution. See Ariz. Const, art. 6, § 33; Ariz. Const, art. 2, § 25; U.S. Const, art. 1, § 10. We need not reach these arguments, however, because the Pension Clause and Yeazell resolve the fundamental issues regarding the Class Members' rights to tire benefit increases formula and the prior contribution rate.

. The Class Members argue that because Fields held that the Bill’s benefit increases formula provision was unconstitutional, the Bill is not entitled to such a presumption. But Fields decided only the Bill’s constitutionality with regard to retired judges and their entitlement to the benefit increases formula. 234 Ariz. at 220-21 ¶¶ 29, 34, 320 P.3d at 1166-67. The issue here is its constitutionality with regard to employed judges and their entitlement to the benefit increases formula and the prior contribution rate.

. EORP also claims that changes to the Class Members’ pension contracts may be justified under the defense of "commercial impracticability.” As with the defense of mutual mistakes of fact, however, "mere market shifts or financial inability do not usually effect discharge under the rule” of commercial impracticability. Restatement (Second) of Contracts § 261 cmt, b; accord id. at § 152 cmt. b (recognizing that the same analysis applies for mutual mistakes of fact and commercial impracticability). Any defense of commercial impracticability thus fails.

. The dissent contends that in ruling that EORP and the State are unable to establish the defenses of mutual mistake of fact and commercial impracticability, we are usurping the trial court's role by improperly determining as fact that poor investment returns were the cause of the Plan’s alleged actuarial unsoundness. See infra ¶¶ 104-106. The dissent maintains that EORP and the State "presented evidence of a variety of causes" and did not rely only on the Plan's poor investment returns. Id. This misunderstands the record and our ruling.
In the pleadings and arguments before the trial court, EORP and the State did not present a "variety of causes” for the Plan’s alleged actuarial unsoundness; they presented two: the Plan’s poor investment returns and the unsustainability of the former benefit increases formula. These are actually the same cause, however. The former benefit increases formula was based on the Plan’s investment returns, see Laws 1998, ch. 264 § 1; Fields, 234 Ariz. at 216 ¶ 4, 320 P.3d at 1162, which is the very reason that EORP and the State allege it was unsustainable. Thus, the claimed mutual mistake of fact or commercial impracticability—whether made forthrightly on poor investment returns or obliquely on the un- *43 sustainability of the benefit increases formula—■ rests on investments returns. Because EORP and the State as a matter of law cannot rely on poor investment returns to support their defenses, see Restatement (Second) of Contracts § 152 cmt. b; id., § 261 cmt. b, our ruling is not improperly based on any factual determination, see Scottsdale Jaycees v. Super. Ct., 17 Ariz.App. 571, 574, 499 P.2d 185, 188 (1972) (holding that when the dispute is not with the facts but with "the legal conclusions to be drawn from” the facts, the legal conclusions "are properly resolved by the court sitting in its capacity as judge and not in its capacity as a trier of fact.”).