IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ANDY BIGGS, ET AL.,**
*Plaintiffs/Appellants*,

*v.*

**THOMAS J. BETLACH,**
*Defendant/Appellee*,

**EDMUNDO MACIAS; GARY GORHAM; DANIEL MCCORMICK; AND TIM FERRELL,**
*Intervenor-Defendants/Appellees*.

No. CV-17-0130-PR
Filed November 17, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Douglas Gerlach, Judge
No. CV2013-011699
**AFFIRMED**

Opinion of the Court of Appeals, Division One
242 Ariz. 55 (App. 2017)
**VACATED**

COUNSEL:

Christina Sandefur (argued), Aditya Dynar, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Andy Biggs, Andrew Tobin, Nancy Barto, Judy Burges, Chester Crandell, Gail Griffin, Al Melvin, Kelli Ward, Steve Yarbrough, Kimberly Yee, John Allen, Brenda Barton, Sonny Borrelli, Paul Boyer, Karen Fann, Eddie Farnsworth, Thomas Forese, David Gowan, Rick Gray, John Kavanagh, Adam Kwasman, Debbie Lesko, David Livingston, Phil Lovas, J. D. Mesnard, Darin Mitchell, Steve Montenegro, Justin Olson, Warren Petersen, Justin Pierce, Carl Seel, Steve Smith, David Stevens, Bob Thorpe, Kelly Townsend, Michelle Ugenti, Jeanette Dubreil, Katie Miller, and Tom Jenney

Douglas C. Northup, Timothy Berg (argued), Patrick Irvine, Carrie Pixler Ryerson, Fennemore Craig, P.C., Phoenix, Attorneys for Thomas J. Betlach

Timothy M. Hogan, Joy Herr-Cardillo, Arizona Center for Law in the Public Interest, Phoenix, and Ellen Sue Katz, William E. Morris Institute for Justice, Phoenix, Attorneys for Edmundo Macias, Gary Gorham, Daniel McCormick, and Tim Ferrell

Roopali H. Desai, D. Andrew Gaona, Coppersmith Brockelman PLC, Phoenix and Ann-Marie Alameddin, Arizona Hospital and Healthcare Association, Phoenix, Attorneys for Amicus Curiae Arizona Hospital and Healthcare Association and Amicus Curiae American Cancer Society Cancer Action Network

James S. Burling, Pacific Legal Foundation, Sacramento, CA, Attorneys for Amici Curiae Pacific Legal Foundation and Howard Jarvis Taxpayers Association

Brett W. Johnson, Andrew Sniegowski, Snell and Wilmer LLP, Phoenix, Attorneys for Amicus Curiae Health System Alliance of Arizona

––––––––––––––

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL, TIMMER, GOULD, and LOPEZ and JUDGE STARING joined.*

––––––––––––––

CHIEF JUSTICE BALES, opinion of the Court:

¶1 In 2013, by a simple majority vote, the legislature enacted H.B. 2010 to expand coverage under Arizona's indigent health care program, Arizona Health Care Cost Containment System ("AHCCCS"), with federal monies funding most of the costs. To fund the remaining costs, the legislature provided in A.R.S. § 36-2901.08(A) that the director of AHCCCS "shall establish, administer and collect an assessment" from Arizona hospitals.

¶2 We hold that the hospital assessment is not subject to article 9, section 22 of the Arizona Constitution, which generally requires that acts

––––––––––––––

* Justice Clint Bolick has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Christopher P. Staring, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

providing for a net increase in state revenues be approved by a two-thirds vote in each house of the legislature. This requirement does not apply to statutorily authorized assessments that "are not prescribed by formula, amount or limit, and are set by a state officer or agency." Ariz. Const. art. 9, § 22(C)(2). Because the exception applies here, we reject the constitutional challenge to the assessment.

**I.**

¶3        In 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), which provides federal funding to states that choose to expand eligibility under their state Medicaid program to all "individuals under the age of 65 with incomes below 133 percent of the federal poverty level." *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012). Under the ACA, the federal government pays most of the costs for the expansion, but federal funding is contingent on a state satisfying various conditions, including paying a share of the costs. *See id.* at 576, 586. Pursuant to the ACA, Arizona enacted H.B. 2010 to expand AHCCCS eligibility to all individuals with incomes not exceeding 133 percent of the federal poverty level. 2013 Ariz. Sess. Laws, ch. 10, §§ 5, 44 (1st Spec. Sess.). To pay for the expanded coverage, H.B. 2010 required the director of AHCCCS to levy an "assessment" on Arizona hospitals. A.R.S. § 36-2901.08(A).

¶4        After the governor signed H.B. 2010, then-state-senator Andy Biggs and thirty-five other legislators who had voted against the bill (the "Opponents") and three citizens filed this action against AHCCCS Director Thomas Betlach and others (collectively the "Director"). The lawsuit sought to enjoin implementation of the hospital assessment, alleging that it violates article 9, section 22 of the Arizona Constitution because § 36-2901.08 was not approved by a two-thirds vote. Although the superior court initially dismissed the case for lack of standing, we reversed and remanded for further proceedings. *Biggs v. Cooper ex rel. Cty. of Maricopa*, 236 Ariz. 415, 420 ¶ 21 (2014).

¶5        On remand, the parties filed cross-motions for summary judgment. The superior court ruled that § 36-2901.08 was properly enacted by a simple majority because the law does not impose a tax but instead falls within an exception listed in article 9, section 22. The court of appeals affirmed. *Biggs v. Betlach*, 242 Ariz. 55, 57 ¶ 2 (App. 2017).

**¶6**         We granted review because the application of article 9, section 22 to the hospital assessment presents legal issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶7**         Under article 9, section 22 of the Arizona Constitution, "[a]n act that provides for a net increase in state revenues, as described in subsection B is effective on the affirmative vote of two-thirds of the members of each house of the legislature."  Ariz. Const. art 9, § 22(A). Subsection (B) states that this supermajority requirement applies to "[t]he imposition of any new tax" and "[t]he imposition of any new state fee or assessment or the authorization of any new administratively set fee."  *Id.* § 22(B)(1), (5).  Subsection (C) exempts from the supermajority requirement "[f]ees and assessments that are authorized by statute, but are not prescribed by formula, amount or limit, and are set by a state officer or agency."  *Id.* § 22(C)(2).

**¶8**         Opponents argue that § 36-2901.08 is unconstitutional because it was not approved by a two-thirds majority, yet it imposes a "new tax" or authorizes a "new administratively set fee," and the (C)(2) exception does not apply.

**¶9**         "Determining constitutionality is a question of law, which we review de novo."  *Gallardo v. State*, 236 Ariz. 84, 87 ¶ 8 (2014).  "When the statute in question involves no fundamental constitutional rights or distinctions based on suspect classifications, we presume the statute is constitutional and will uphold it unless it clearly is not."  *Cave Creek Unified Sch. Dist. v. Ducey,* 233 Ariz. 1, 5 ¶ 11 (2013); *see also Hall v. Elected Officials Ret. Plan*, 241 Ariz. 33, 38 ¶ 14 (2016) (observing that the party challenging a statute bears the burden of overcoming a presumption of constitutionality).

**¶10**         "The Constitution should be construed so as to ascertain and give effect to the intent and purpose of the framers and the people who adopted it."  *Brewer v. Burns*, 222 Ariz. 234, 239 ¶ 26 (2009) (internal citation and quotation omitted).  "We give effect to the purpose indicated, by a fair interpretation of the language used, and unless the context suggests

otherwise words are to be given their natural, obvious and ordinary meaning." *Id.* (internal citation and quotation omitted).

**A.**

**¶11**        We first consider whether the hospital assessment is a "tax" for purposes of article 9, section 22. The Constitution uses the word "tax" as distinct from "fees and assessments," but does not itself define these terms.

**¶12**        Opponents argue that if the hospital assessment constitutes a "tax" for purposes of section 22, the two-thirds approval requirement applies, and it is unnecessary to consider the exception under (C)(2), which refers only to "[f]ees and assessments." The Director, in contrast, contends that we need not determine whether the hospital assessment is a "tax" because the term "assessment" can, in some contexts, encompass taxes, and therefore we should uphold the hospital assessment if it qualifies for the (C)(2) exception. *Cf. May v. McNally*, 203 Ariz. 425, 431 ¶ 24 (2002) (using term "assessment" in First Amendment context to refer to both taxes and fees).

**¶13**        We agree with Opponents that we must determine whether the hospital "assessment" - however labeled - is truly a "tax" within the meaning of section 22. In specifying when the two-thirds vote requirement applies, section 22 distinguishes taxes from fees and assessments. Subsection (B) addresses taxes in subparagraphs (1), (2), (3), and (7), while subparagraphs (4), (5), and (6) reference fees or assessments. Ariz. Const. art. 9, § 22(B). Taxes are not mentioned in the (C)(2) exception, in contrast to (C)(3), which excepts "[t]axes, fees or assessments that are imposed by counties, cities, towns and other political subdivisions of this state." *Id.* § 22(C)(3). To treat "tax" as subsumed within "assessment" for purposes of (C)(2) would contradict the constitutional language and potentially allow the legislature to circumvent the tax-specific limitations imposed by article 9, section 22.

**¶14**        Because the Constitution does not define the terms "tax," "fee," or "assessment" for purposes of section 22, we look to more general caselaw for guidance, as do the parties. In doing so, we recognize that courts in other contexts - as *May* reflects - have sometimes used "assessment" as a generic term that includes both taxes and fees. For

purposes of this case, however, we must distinguish "assessments" from "taxes," though it is not necessary here to delineate between "fees" and "assessments," as both are subject to the (C)(2) exception. We reject Opponents' suggestion, based on cases involving special assessments, that "assessments" concern only payments collected to benefit a particular property or the payor.

¶15         As the First Circuit has explained:

> [The cases] have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation.

*San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992); *see also Jachimek v. State*, 205 Ariz. 632, 636 ¶ 14 (App. 2003). The challenge, of course, is determining how to characterize a legislative act increasing state revenues that does not fall at either end of the spectrum.

¶16         In *May*, this Court used a three-factor test in determining whether an "assessment" should be categorized as a tax or instead a fee in the First Amendment context. *See May*, 203 Ariz. at 430-31 ¶ 24. This test evaluates "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Id.* (quoting *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996)).

¶17         Opponents argue that because the *May* test was adopted in a First Amendment context, it is not dispositive here. To be sure, "the definition of tax in one context . . . has no talismanic significance." *Bidart Bros.*, 73 F.3d at 930 (internal citation and quotation omitted). Nevertheless, the *May* test provides a useful analytical tool for distinguishing taxes from fees or assessments. *See Jachimek*, 205 Ariz. at 636-37 ¶¶ 14-22 (employing the three-factor *May* test in determining whether a "fee" on pawnbroker transactions was a tax or a fee); *see also Bidart Bros.*, 73 F.3d at 931

(employing the same three-factor test in determining whether an "assessment" was a tax or a fee in the context of the Tax Injunction Act).

¶18        Each of the *May* factors suggests that § 36-2901.08 does not impose a "tax." First, the hospital assessment, although authorized by the statute, is imposed by the director. *See Bidart Bros.*, 73 F.3d at 931 ("An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency."). Opponents maintain that the assessment is imposed by the legislature because § 36-2901.08(A) provides that "[t]he director shall establish, administer and collect an assessment on hospital revenues, discharges or bed days." This argument conflates the authorization of the assessment with its imposition. Under the statute, the director identifies how the assessment is determined, the amount, and whether hospitals are exempted from paying anything. A.R.S. § 36-2901.08(B), (C); *see also* Ariz. Admin. Code § R9-22-730(B), (I) (identifying various types of hospitals excluded from assessment). The director is responsible for establishing, collecting, and enforcing the assessment. A.R.S. § 36-2901.08(A), (H). Thus, for purposes of the *May* test, the director - not the legislature - imposes the assessment. *Cf. Jachimek*, 205 Ariz. at 636 ¶ 15 (concluding that a pawnshop fee was imposed by "the governmental entity that has been delegated regulatory authority over pawn transaction reports pursuant to the statute").

¶19        The second *May* factor recognizes that "[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Bidart Bros.*, 73 F.3d at 931. Opponents argue that this factor supports characterizing § 36-2901.08 as imposing a tax because the assessment is collected from a broad class of hospitals regardless of any benefit they receive from the revenues collected or their patients' eligibility for AHCCCS.

¶20        Several aspects of the hospital assessment lead us to conclude it is imposed on a narrow class, which weighs against treating it as a tax. The assessment is imposed only on hospitals, which cannot pass on the costs to patients or third-party payors. A.R.S. § 36-2901.08(G). The statute further contemplates that the assessment will not be imposed on all hospitals, as the director may "establish modifications or exemptions" based on various factors, including a hospital's size, services, and location. *Id.* § 36-2901.08(C). Indeed, as implemented, the assessment does not apply to many types of hospitals. Ariz. Admin. Code § R9-22-730(I). Finally, even

if the assessment did apply to all Arizona hospitals, it would still be limited to a narrow class for purposes of determining whether it is a tax. *See Bidart Bros.*, 73 F.3d at 932 (assessment imposed only upon apple producers was a narrow imposition and weighed in favor of finding that the assessment was not a tax); *Jachimek*, 205 Ariz. at 948-49 ¶¶ 14-22 ("fee" imposed only on pawnbrokers was a fee, not a tax).

¶21     As for the third *May* factor, Opponents argue that the hospital assessment is collected for a general public purpose - to fund the Medicaid expansion - and not to provide any specific benefit to hospitals. We reject this argument insofar as it presumes that a fee or assessment necessarily constitutes a tax if the revenues collected serve any public purpose rather than benefitting only those who pay it. Instead, an assessment or fee can be characterized as such rather than a tax if there is "'some reasonable relation to the service to be performed' on the payor's behalf." *Jachimek*, 205 Ariz. at 637 ¶ 21 (quoting *Stewart v. Verde River Irrigation & Power Dist.*, 49 Ariz. 531, 548 (1937)); *see also Kyrene Sch. Dist. No. 28 v. Chandler*, 150 Ariz. 240, 244 (App. 1986) (finding that a school "receiv[ed] the overall benefit of [a city's] water and wastewater systems in exchange for . . . system development charges").

¶22     Although H.B. 2010 serves a public purpose by expanding AHCCCS eligibility, the assessment was expressly intended and in fact serves to benefit the hospitals. Hospital assessments are to "be used for the benefit of hospitals for the purpose of providing health care for persons eligible for coverage funded by the hospital assessment." 2013 Ariz. Sess. Laws, ch. 10, § 44(3) (1st Spec. Sess.). Assessment revenues are deposited into a "hospital assessment fund," A.R.S. § 36-2901.08(F), and cannot revert to the state general fund to be used for another public purpose, *id.* § 36-2901.09(C)(1). "An assessment placed in a special fund and used only for special purposes is less likely to be a tax." *Bidart Bros.*, 73 F.3d at 932.

¶23     The assessments also enable hospitals to be compensated for treating patients who are unable to pay. Hospitals are required by federal law to provide emergency room treatment for patients regardless of their ability to pay. 42 U.S.C. § 1395dd. Because of the AHCCCS expansion, which depends on the assessment, more than 250,000 additional persons are now covered, and hospitals receive payments for treating them and have lower costs for uncompensated care. Indeed, Opponents

acknowledged below that the assessment operates in a way that benefits the hospitals.

**¶24**      Weighing the three *May* factors, we conclude that the hospital assessment is not a "tax" for purposes of article 9, section 22. The assessment is imposed by the director on hospitals, a narrow class, and directly benefits hospitals by expanding AHCCCS coverage for uninsured patients, thereby increasing payments to the hospitals.

**B.**

**¶25**      Because the hospital assessment is not a tax, we must consider whether it falls within the exception under subsection (C)(2). Subsection (A) states that "[a]n act that provides for a net increase in state revenues" must be approved by a two-thirds vote, and subsection (B)(5) specifically applies this requirement to "any act" that increases state revenue by "[t]he imposition of any new state fee or assessment or the authorization of any new administratively set fee." Ariz. Const. art. 9, § 22(A), (B)(5). Subsections (A) and (B), however, do not apply to "[f]ees and assessments that are authorized by statute, but are not prescribed by formula, amount or limit, and are set by a state officer or agency." *Id*. art. 9, § 22(C)(2).

**¶26**      There is no dispute that the hospital assessment is set by the director, so whether (C)(2) applies turns on whether the assessment is "authorized by statute" and, if so, whether it is "not prescribed by formula, amount or limit." (For reasons noted *supra* ¶ 18, we conclude that by enacting H.B. 2010, the legislature did not impose the assessment, and thus this case does not implicate a statutory "imposition of a[] new state fee or assessment" for purposes of (B)(5)).

**¶27**      Opponents argue that "authorized by statute" for purposes of the (C)(2) exception means that a fee or assessment is authorized by a statute that either preexisted the 1992 adoption of article 9, section 22 or has since been approved by a two-thirds majority. This interpretation, Opponents maintain, is necessary to give effect to all of section 22, to implement the voters' intent, and to avoid absurd results. We disagree.

**¶28**      By its terms, (C)(2) does not state that it applies only to statutory authorizations that either preexisted the adoption of the constitutional provision or that are later approved by a two-thirds vote.

Interpreting (C)(2) as stating that section 22 does not apply to fees or assessments that are authorized by a statute approved by a two-thirds vote would not be an exception, as such a statute would satisfy subsections (A) and (B)(5). And subsection (B)(5) by its terms does not apply to the *imposition* of administratively set fees, so subsection (C)(2) is not needed to allow agencies or state officers to increase fees under statutory authorizations that predated section 22's adoption.

¶29 The phrase "authorized by statute" in (C)(2) is most reasonably construed as referring to fees and assessments that are statutorily authorized under the usual legislative process, that is, by a simple majority vote. This interpretation, unlike the one urged by Opponents, gives force to the language of both subsections (C)(2) and (B)(5). Under (B)(5), the supermajority requirement applies to "any act" authorizing "any new administratively set fee," except that requirement, by the terms of (C)(2), does not apply to statutes authorizing fees and assessments "that are not prescribed by formula, amount or limit, and are set by a state officer or agency." To decide otherwise would mean that an act would have to first satisfy the supermajority requirement before it could be exempted from it.

¶30 Interpreting subsection (C)(2) as allowing the legislature, by a simple majority vote, to authorize the imposition of certain new fees or assessments by state officers or agencies does not contradict the voters' intent or lead to absurd results. In approving section 22, the voters limited the legislature's ability to itself increase state revenues through taxes, fees, or assessments. This goal is reflected in both section 22's language and statements in the voter publicity pamphlet. But it is also clear that section 22, by its terms, does not require supermajority legislative approval for every governmental action that might increase state revenues, inasmuch as subsection (B) applies only to legislative acts and subsection (C) excepts inflationary or similar effects "not caused by an affirmative act of the legislature," certain fees and assessments "set by a state officer or agency," and "[t]axes, fees or assessments" imposed by local governments and political subdivisions. Ariz. Const. art. 9, § 22(C)(1)–(3).

¶31 The legislative council analysis in the 1992 voter pamphlet explained that:

> Proposition 108 would amend the State Constitution to require a two-thirds vote in each House of the Legislature to enact a net increase in state revenue through (1) enacting any new or increased tax or statutory fee, (2) reducing or eliminating any exemption or credit on a tax or fee or (3) making any change in the allocation of tax revenues among the state, counties and cities.

Ariz. Sec'y of State, 1992 Publicity Pamphlet 45 (1992), https://www.azsos.gov/sites/azsos.gov/files/pubpam92.pdf. The voter pamphlet further observed that Proposition 108 would not affect "authorized fees and assessments that are not set or limited by law, such as university tuition." *Id.* at 46. The voter pamphlet, notably, is consistent with section 22's focus on constraining the legislature's actions and excepting fees and assessments that are authorized but not set or limited by law. Neither the voter pamphlet nor any other legislative history identified by Opponents states that the (C)(2) exception would be limited to administratively set fees or assessments that were either already authorized or later authorized by a supermajority.

**¶32**        Our interpretation of (C)(2) is consistent with the expressed intent of the voters in approving section 22. If the legislature seeks to enact a statute that increases state revenues by authorizing an administratively set fee with a prescribed "formula, amount or limit," (B)(5) requires approval by two-thirds of each house. But this requirement does not apply when the legislature delegates the determination of a fee or assessment to a state agency or officer. Distinguishing between legislatively prescribed fees or assessments and fees or assessments that are administratively determined comports with the voters' desire to constrain the legislature and does not lead to an absurd result.

**¶33**        Because we conclude that the hospital assessment is "statutorily authorized," we next consider whether it falls outside the (C)(2) exception because it is "prescribed by formula, amount or limit." Opponents argue that § 36-2901.08 (1) prescribes factors for the director to consider when determining modifications, (2) requires legislative preapproval of the assessment and any alteration in the method of its calculation, (3) forbids assessments entirely in specified circumstances, and (4) requires the director to administer the tax in accordance with federal law.

**¶34**        In assessing Opponents' arguments, we note initially that the phrase "prescribed by formula, amount or limit" refers to prescriptions conferred by state statutes, because this phrase follows "authorized by statute," and section 22 applies to state legislative acts. *Cf. Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135 ¶ 34 (2011) (recognizing that words in constitution must be interpreted in context). Moreover, because "limit" follows the words "formula" and "amount," we construe it as similarly referring to the quantitative aspects of administratively imposed fees or assessments. *See id.*; *see also Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326 ¶ 13 (2011) (noting that "a statutory term is interpreted in context of the accompanying words"). Reading "limit" as referring broadly to any constraints whatsoever on administrative action would render (C)(2) ineffective, as the non-delegation doctrine prevents the legislature from granting unlimited discretion to an officer or agency to impose fees or assessments. *See, e.g.*, *State v. Marana Plantations, Inc.*, 75 Ariz. 111, 114 (1953) (noting that a statute granting regulatory power "with no prescribed restraints nor criterion nor guide to its action offends the Constitution as a delegation of legislative power").

**¶35**        With these points in mind, we turn to the statutory provisions for the assessment. Section 36-2901.08(B) instructs the AHCCCS director to adopt rules regarding the method for determining the assessment and modifications or exemptions from the assessment. In doing so, "the director *may* consider factors including the size of the hospital, the specialty services available to patients and the geographic location of the hospital." A.R.S. § 36-2901.08(C) (emphasis added). The director is required to "present the methodology to the joint legislative budget committee for review," *id.* § 36-2901.08(D), but this subsection does not require legislative preapproval of the assessment or modifications. These provisions do not prescribe a "formula, amount or limit" for the assessment.

**¶36**        Nor do the statutory terms incorporate formulas, amounts, or limits by referencing federal law. Section 36-2901.08(B) provides that "[t]he assessment is subject to approval by the federal government to ensure that the assessment is not established or administered in a manner that causes a reduction in federal financial participation." Section 36-2901.08(E) instructs the AHCCCS administration not to collect an assessment if the federal medical assistance percentage applicable to Arizona is reduced to less than eighty percent. These provisions do not prescribe formulas, amounts, or limits for the hospital assessment. Instead, they condition the collection of

the assessment on the continuation of the federal support for the AHCCCS expansion that the assessment is intended to secure.

¶37      To summarize, we hold that the hospital assessment authorized in A.R.S. § 36-2901.08 is not a "tax" for purposes of article 9, section 22 of the Arizona Constitution and it is excepted from the supermajority vote requirement under subsection 22(C)(2) because it is "not prescribed by formula, amount or limit" and is set by the AHCCCS director.

## III.

¶38      We affirm the judgment of the trial court, vacate the opinion of the court of appeals, and deny Opponents' application for attorney fees.